[No. A041335. First Dist., Div. Two. Jan. 9, 1990.]

JOHN BEEMAN, Plaintiff and Respondent, v.
SPENCER M. BURLING, Defendant and Appellant.

COUNSEL

E. Elizabeth Summers and Ronald J. Souza for Defendant and Appellant.

Michael S. Rossoff and David L. Matt for Plaintiff and Respondent.

OPINION

KLINE, P. J.—Appellant Spencer M. Burling appeals a default judgment rendered against him in the amount of $197,044.01. He asserts (1) the default judgment must be vacated because he was not personally served with the statement of damages and because respondent's proof at the default hearing amounted to a de facto amendment of the complaint, which should have revived appellant's ability to respond; (2) the judgment relies upon two sections of the San Francisco Rent Ordinance that are unconstitutional; (3) the judgment exceeds the relief demanded and thus must be reduced; and (4) the court abused its discretion in denying relief from default under Code of Civil Procedure section 473. We affirm.

### BACKGROUND

Appellant purchased an apartment building at 76 Deming Street in March 1986. On approximately March 24 he served an eviction notice upon

respondent John Beeman, indicating he wished to occupy respondent's unit himself.[1] Respondent moved out of the apartment on April 1. Respondent testified that although appellant did move into the vacated apartment, he lived there for less than three months. The San Francisco Rent Ordinance (Rent Ordinance) requires an owner to reside for 12 months in an apartment that has been vacated pursuant to an "owner move-in" eviction notice.

On May 20, 1986 appellant served an eviction notice upon another tenant, Richard Kronstedt. Mr. Kronstedt testified that the notice indicated appellant's business partner was intending to occupy that unit. He vacated the apartment on approximately June 12, 1986. Similarly, in June 1986 another tenant, Steve Munnell, received an "owner move-in" eviction notice from appellant's business partners, Emmett Hayes and Robert Hill.

In August 1986 respondent sued appellant for wrongful eviction. Following appellant's motion to strike respondent filed a first amended complaint. The amended complaint alleged that appellant had wrongfully evicted respondent with the intention of renting the vacated unit at a higher rental and thus increasing the building's overall value. The complaint set forth 14 causes of action, including actions for negligence, constructive eviction, fraud and violation of the Rent Ordinance. Respondent sought special and general damages according to proof, punitive damages and treble statutory damages under the Rent Ordinance.

Appellant demurred and moved to strike portions of the amended complaint. Following a hearing on January 20, 1987 the court overruled the demurrer, granted the motion to strike in part and ordered appellant to respond to the complaint within 30 days.

Four other tenants of 76 Deming Street also filed suit against appellant alleging similar causes of action. All were represented by the attorney representing respondent. Counsel eventually agreed that appellant would respond to all of the complaints on or before May 16, 1987. Timely answers were filed in three of the pending cases. On May 22 respondent's counsel served appellant's counsel, Mr. Zimmerman, with statements of damages in the instant case and in the case filed by another tenant, Richard Kronstedt. Respondent also offered, pursuant to Code of Civil Procedure section 998, to settle the matter for $30,000. On June 19, respondent's counsel wrote to

---

[1] At the time the notice was served the apartment building was protected by the San Francisco Rent Ordinance, since it was a nonowner occupied building containing more than four units. Appellant was apparently aware of this fact, as the eviction notice contained a warning—only required in connection with evictions involving rent controlled units—that the Rent Board should be consulted for advice regarding the eviction.

Zimmerman, warning that he would take appellant's default in the *Kronstedt* and *Beeman* cases if no response was filed by June 17. No answers were filed.

Appellant's counsel did not respond to the default warning because he was distracted by the hospitalization of his girlfriend on June 20. During the hospitalization his girlfriend's young daughter was left in the care of her grandfather, who is mentally impaired, and counsel was required to assume significant responsibility for the care of the child.

According to Zimmerman's declaration, during this time he believed an answer had been properly filed in this matter. He did not notice any letters threatening a default until he received a request to enter default on July 1, 1987. Respondent's counsel refused to have the default set aside, stating his client would not permit him to do so; however, counsel did grant appellant's attorney an extension to respond in the *Kronstedt* matter. By his own admission, Zimmerman "simply blocked the case out of [his] mind" and did not file a motion to have the default set aside.

A hearing on the default judgment was held on October 21, 1987. Respondent and three other tenants testified regarding the eviction notices they received when they lived at 76 Deming Street. Stephen Munnell asserted that appellant was "unpleasant" and "threatening" and "did everything to make [the tenants] feel completely uneasy." Richard Kronstedt described appellant's "intimidating manner" and stated he was "very rude [and] very abrupt." Maurice Jarrett also complained that he felt threatened by appellant and was intimidated by appellant yelling at the tenants that they were to "'get out or else.'" The witnesses also testified that following respondent's eviction appellant did not occupy respondent's apartment for a continuous 12-month period, a fact which under the Rent Ordinance raises a presumption that the eviction was not a valid "owner-occupy" eviction. Based on this evidence the court awarded respondent $197,044.01 in damages, costs and disbursements.

Appellant was unaware of these proceedings and did not learn of the judgment until he retained new counsel on November 2, 1987. His new counsel moved for relief from default on the grounds that (1) the default was taken in violation of Code of Civil Procedure section 425.11, which, he alleges, has been construed to require personal service of a statement of damages; and (2) an answer was not filed due to his former counsel's excusable mistake and neglect, which warrants the granting of relief from default under Code of Civil Procedure section 473. The court denied the motion on the ground that appellant had not demonstrated the default resulted from counsel's excusable neglect.

Appellant moved for reconsideration of the motion to vacate the default; respondent objected, arguing the motion was untimely and did not allege any new facts. The court denied the motion because no new facts were alleged and the record was inadequate to establish abandonment.

This timely appeal followed.

## DISCUSSION

### A. *Procedural Irregularities*

#### 1. *Service pursuant to Code of Civil Procedure section 425.11.*

■ Code of Civil Procedure section 425.11 provides, in pertinent part, that "the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered (1) before a default may be taken . . . ."[2] Appellant argues, based on *Engebretson & Co.* v. *Harrison* (1981) 125 Cal.App.3d 436 [178 Cal.Rptr. 77] and *Plotitsa* v. *Superior Court, supra*, 140 Cal.App.3d 755, that respondent's service of the statement of damages was insufficient since it was mailed to appellant's counsel, rather than personally served upon appellant.

In *Engebretson,* the court determined that where a defendant *has failed to appear,* personal service of an amended complaint is a prerequisite to a valid default judgment. (125 Cal.App.3d at pp. 440-444.) The court reasoned that nonappearing and defaulting defendants, who already have decided to permit a default judgment for the amount originally sought, might not pay adequate attention to an amendment served by mail, since they may mistakenly view it as merely a procedural step to obtaining the default judgment. In *Plotitsa,* the court used the same reasoning in holding that the defendants, *who had not made an appearance in the action,* were entitled to personal service of the statement of damages required prior to entry of a default judgment. (*Plotitsa, supra,* 140 Cal.App.3d at pp. 759-761.)

Despite the fact that *Engebretson* and *Plotitsa* both involved nonappearing defendants, appellant urges us to extend this rule to defendants who

---

[2] Code of Civil Procedure section 425.10, as amended in 1974, prohibits any statement in a complaint of the amount of damages sought for personal injury in superior court. The legislative purpose of the provision was to protect defendants in personal injury and wrongful death actions from adverse publicity resulting from prayers for greatly exaggerated damage claims bearing little relation to reasonable expectations of recovery. (*Plotitsa* v. *Superior Court* (1983) 140 Cal.App.3d 755, 759 [189 Cal.Rptr. 769]; see Review of Selected 1974 California Legislation (1975) 6 Pacific L.J. 125, 217.)

Code of Civil Procedure section 425.11 fills the gap created by the amendment of section 425.10 by requiring service of a statement of damages "setting forth the nature and amount of damages being sought."

have appeared in the action. He argues the purpose of Code of Civil Procedure section 425.11—to give the defendant one "last clear chance" to respond to the allegations—applies with even greater force to a litigant who has appeared and thus expressed his desire to present a defense.

We disagree with appellant's argument. Appellant does not deny that he made an appearance in this action when he filed a demurrer and motion to strike. (Code Civ. Proc., § 1014 ["A defendant appears in an action when he . . . demurs [or] files a notice of motion to strike . . . "].) He also does not dispute the fact that he was represented by counsel. He is therefore unlike the defendants in *Plotitsa,* who made no appearance and were unrepresented by counsel. Moreover, in *Plotitsa* there was a question as to whether service upon the defendants was effective; in the instant case the statutory notice admittedly was received, but went unheeded. On the facts presented we see no reason to extend *Plotitsa* to require personal service upon a defendant who, by filing a demurrer and a motion to strike, has made an appearance in the action.

Appellant admits his attorney was properly served with—and actually received—a statement of damages prior to the default. Thus, appellant's problem arises not from the mode of service, but from appellant's attorney's failure to respond to the threatened default. We therefore reject appellant's contention and conclude the statement of damages was properly served by mail upon appellant's counsel.[3]

2. *Variances between allegations and proof.*

Appellant maintains that because the evidence presented at the default hearing went beyond the scope of the complaint it was tantamount to an amendment, which should revive his right to answer. In particular, appellant complains that (1) testimony concerning the conduct of his business partners was introduced, although the complaint was not amended to name those individuals; and (2) tenants other than respondent testified regarding their dealings with appellant and his partners despite the fact that such testimony did not relate to the allegedly wrongful evictions and could not properly be used to support an award of punitive damages to respondent.

A substantive amendment to a complaint supersedes the original complaint, and effectively "opens the default," which permits the defaulting

---

[3] According to Code of Civil Procedure section 1010, "[n]otices and other papers may be served upon the party *or attorney* in the manner prescribed by this chapter, when not otherwise provided by this code." (Italics added.) Since Code of Civil Procedure section 425.11 does not specify the mode of service required, the statement of damages may, under section 1010, be served upon a defendant's attorney.

defendant to answer. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter 1984) Default, § 5:85, p. 5-21.3; *Engebretson & Co.* v. *Harrison, supra*, 125 Cal.App.3d 436, 440.) The purpose of this rule is to insure the defendant has an opportunity to reassess the action in light of the changes made in the complaint. (*Ibid.*)

The rule has no application in this case because the "amendments" appellant focuses on did not result in any substantive changes and did not expose appellant to any greater or different liability than was presented by the complaint on file. Accordingly, there was no need to open the default to allow a reassessment of the action. While certain of the witnesses testified regarding the conduct of Emmett Hayes and Robert Hill, appellant's purported business associates, such references did not affect appellant's exposure and did not amount to a de facto amendment which added these men as defendants. Moreover, appellant was on notice that his agents and employees would be implicated since the complaint alleged that appellant and his agents together had engaged in unlawful business practices which resulted in respondent's losses. As such, the use of their actual names did not change the substance of the complaint or in any way surprise or disadvantage appellant.

Appellant also objects to testimony by tenants other than respondent concerning threatening or intimidating encounters with appellant and his partners. He argues only testimony directly relating to the assertedly wrongful evictions ought to have been used, and objects to the evidence concerning incidents involving tenants other than respondent. We find this argument unpersuasive.

First, appellant admits that evidence concerning his efforts to wrongfully evict other tenants from their apartments is relevant to respondent's claim that appellant engaged in an unlawful course of conduct under Business and Professions Code section 17200. Thus, the court did not err in permitting such testimony at the hearing. Moreover, after reviewing the record and the trial court's conclusions it is apparent the error, if any, in admitting this testimony was harmless. The evidence was presented to support respondent's claim that appellant's actions were willful and malicious, which would justify an award of punitive damages. However, the court specifically indicated that it was not awarding punitive damages because it considered the treble damages under the Rent Ordinance sufficient.[4] Thus, the damage award was unaffected by the evidence of intimidation offered by the other tenants: under the Rent Ordinance respondent would have been entitled to

---

[4] The court observed, "[w]hatever the rent ordinance provides as the triple damages is sufficient punitive damages in this case."

the identical award based solely on the fact that he was wrongfully evicted based on the false assertion that respondent's unit was to be owner-occupied.[5]

## B. *Constitutionality of Rent Ordinance*

Appellant maintains the default judgment must be vacated because it is founded on two sections of the Rent Ordinance which unconstitutionally conflict with the general California laws on punitive damages and allocation of the burden of proof.

### 1. *Section 37.9.*

Section 37.9(a) of the Rent Ordinance sets forth the conditions governing an owner's repossession of a rental unit. Subdivision 8 provides an owner may recover possession of a unit if he does so "in good faith, without ulterior reasons and with honest intent, for the landlord's use or occupancy as his or her principal residence . . . for a period of at least 12 continuous months." That provision further states that "[i]t shall be rebuttably presumed that the landlord has not acted in good faith if the owner or relative for whom the tenant was evicted does not move into the unit and occupy said unit for a minimum of 12 continuous months." Appellant maintains this presumption impermissibly conflicts with the allocation of the burden of proof set out in Evidence Code section 500,[6] since it relieves the tenant of the burden of proving the eviction was done in bad faith.

While this argument has some force (see *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261]),[7] we need not reach the

---

[5] Appellant's reliance upon *Jackson* v. *Bank of America* (1986) 188 Cal.App.3d 375 [233 Cal.Rptr. 162] is unavailing. In that case, the plaintiff at a default hearing sought to prove damages resulting from the bank's allegedly wrongful sale of certain bonds. The bank appealed, arguing plaintiff's introduction of evidence concerning the sale amounted to a de facto amendment of the complaint, which made no reference to the sale. There the court correctly held that evidence of the bond sales could not be used because the complaint had failed to allege sale of the bonds or any other conduct on the part of the bank which caused the asserted loss. (*Id.*, at p. 388.) In comparison, in the instant case the complaint alleged all the facts necessary to support respondent's recovery; the testimony merely substantiated those allegations.

[6] Evidence Code section 500 provides "[e]xcept as provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

[7] In *Fisher* our Supreme Court considered a similar challenge to section 14 of Berkeley's rent control ordinance, which provided that any eviction within six months following a tenant's exercise of rights under the ordinance was presumptively retaliatory. The landlords challenging the ordinance argued that because proof of retaliation is essential to a tenant's defense or claim for relief, under Evidence Code section 500, the tenant must prove the fact of retaliation. The court agreed and declared the provision invalid, because "the presumption in

question of the provision's validity. ■ "The *judgment by default* is said to 'confess' the material facts alleged by plaintiff. i.e., the defendant's failure to answer has the same effect as an express admission of the matters well pleaded in the complaint." (6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 243, p. 545.) Thus, because the judgment was taken by default, appellant essentially admitted the truth of respondent's claim of unlawful eviction and respondent was not obligated to establish that fact. Although respondent's complaint asserted his eviction violated section 37.9(a), the wrongfulness of that eviction was effectively conceded, and there was no need for the court to rely on the presumption contained in the Rent Ordinance to find against appellant on that claim. (Code Civ. Proc., § 585, subd. (b) [default hearing used to present evidence as to damages so the court may enter judgment "for such sum . . . as appears by such evidence to be just."]) Accordingly, the validity of section 37.9(a) was not essential to the judgment below.

2. *Section 37.9(f).*

■■ Section 37.9(f) of the Rent Ordinance provides as follows: "Whenever a landlord wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of Sections 37.9 and/or 37.10 . . . the tenant or Board may institute a civil proceeding for injunctive relief, *money damages of not less than three times actual damages,* and whatever other relief the court deems appropriate." (Italics added.) Appellant claims this ordinance unconstitutionally conflicts with Civil Code section 3294 because (1) it requires an award of treble damages, and thus deprives the court or jury of the discretion to award no punitive damages or some other appropriate amount of exemplary damages; and (2) it permits an award of punitive damages without proof the defendant is guilty of "oppression, fraud or malice" as required by statute.

■ The problem with appellant's argument is that it erroneously equates punitive damages with statutory damages, and assumes the two are awarded based on the same standards. (See *Kelly* v. *Yee* (1989) 213 Cal.App.3d 336 [261 Cal.Rptr. 568] [rejecting respondent landlord's argument that section 37.9(f) is preempted by Civil Code section 3294 because treble damages are "punitive in nature."]) Appellant correctly points out that the judge or jury, as the case may be, has the authority to decide whether and what amount of punitive damages should be awarded. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 387-388 [202 Cal.Rptr. 204].) In contrast, statutory damages are set by a legisla-

section 14 shifting the burden of proof, on its face, directly conflicts with the Evidence Code." (37 Cal.3d at p. 698.)

tive body; while the fact finder must still determine *whether* such damages are to be awarded, if they are granted the amount is fixed by statute. Statutory damages may either take the form of penalties, which impose damages in an arbitrary sum, regardless of actual damages suffered or, as in the instant case, may provide for the doubling or trebling of the actual damages as determined by the judge or jury. (6 Witkin, Summary of Cal. Law (9th ed. 1987) Torts §§ 1332-1333, at pp. 790-791.) Thus, while both exemplary damages and statutory damages serve to motivate compliance with the law and punish wrongdoers, they are distinct legal concepts, one of which is entrusted to the factfinder, the other to the Legislature. The numerous statutes specifically providing for treble damages testify to the fact that the Legislature never intended Civil Code sections 3294 and 3295 to restrict its ability to set the appropriate damage award in particular areas. (See, e.g., Code Civ. Proc., § 732 [treble damages for waste]; Code Civ. Proc., § 733 [for trespass]; Code Civ. Proc., § 735 [for forcible or unlawful entry]; Civ. Code, § 52 [for discrimination based sex, color, race, religion, ancestry or national origin]; Civ. Code, § 1719 [for writing check without sufficient funds].)

██ Since we have concluded Civil Code sections 3294 and 3295 do not restrict the imposition of statutory damages, section 37.9(f) is valid so long as it does not impinge on an area covered by any state law. The issue addressed by the Rent Ordinance, i.e., residential rent control laws and the penalties for their violation, has been recognized as a peculiarly local concern which is left to local regulation. (*Kelly* v. *Yee, supra*, 213 Cal.App.3d at pp. 341-342 [concluding that the treble damages under section 37.9(f) serve a different function than, and are thus not preempted by, Civil Code section 3294].) This fact is underscored by language contained in Civil Code section 1954.25, enacted in 1987. There our state Legislature observed that "the price charged for commercial real property is a matter of statewide concern." However, the statute specifically declares that "this chapter [concerning rent control on *commercial* property] shall not apply or be interpreted to apply to local rent controls on *residential* real property." (Italics added.) Thus, the Legislature clearly left to local governments the power to regulate rent control on residential property. Section 37.9(f) represents a proper exercise of the concomitant power to set appropriate penalties for violations of those regulations.

## C. *Damage Award*

Appellant claims the damage award cannot stand because (1) the court awarded special damages in excess of that requested; (2) the court improperly included a $20,000 award for mental anguish in the damages to be tripled under section 37.9(f) of the Rent Ordinance; and (3) the punitive

damages were erroneously awarded in the absence of evidence concerning appellant's wealth.

### 1. *Award of excessive special damages.*

Appellant next asserts the court erred in awarding $42,948 in special damages when respondent only sought $25,000. He points out that where the award resulting from a default judgment exceeds the relief sought the award must be amended to conform to the requirements of Code of Civil Procedure section 580.[8] (*Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 829 [231 Cal.Rptr. 220, 726 P.2d 1295].) Furthermore, in *Plotitsa* v. *Superior Court, supra,* 140 Cal.App.3d 755, 761-762 the court held that a statement of damages which did not include a breakdown between general and special damages as provided in Code of Civil Procedure section 425.11 was insufficient. The court stated, "[a]lthough sections 425.10 and 425.11 are silent as to the purpose of requiring a statement of both special and general damages sought, it certainly appears that such information aids a defendant in evaluating the validity of plaintiff's damage claims with regard to their provability."

Respondent's complaint sought "actual and special damages, including, but not limited to, moving expenses, increased housing costs for an inferior residence, expenses for installing telephone and utilities, loss of earnings, loss of business goodwill and identity, business expenses arising out of relocation, and higher utility costs." ■ "General damages are 'those which necessarily result from the act complained of,' and are implied by law to have thereby accrued to plaintiff. ■ Special damages, on the other hand, are defined as damages which do not arise from the wrongful act itself, but depend on the circumstances peculiar to the infliction of each respective injury." (*Myers* v. *Stephens* (1965) 233 Cal.App.2d 104, 120-121 [43 Cal.Rptr. 420], citations omitted.) " 'Special damages' refers to out-of-pocket losses that can be documented by bills, receipts, cancelled checks, and business and wage records. Special damages generally include medical and related expense, loss of income, and the loss or cost of services. ■ [¶] 'General damages' refers to damages for harm or loss such as pain, suffering, emotional distress, and other forms of detriment that are sometimes characterized as 'subjective' or not directly quantifiable." ( Cal. Tort Damages (Cont.Ed.Bar 1988) § 1.4, p. 6.)

Appellant argues the sum of the damages awarded for increased housing costs, moving expenses, loss of earnings and mental anguish, all assertedly

---

[8] Code of Civil Procedure section 580 states, in pertinent part, that "[t]he relief granted to the plaintiff, if there be no answer, cannot exceed that which he shall have demanded in his complaint . . . ."

special damages, exceeds the $25,000 sought in the statement of damages. In response, respondent maintains that only the damages awarded for mental anguish are properly characterized as special damages, and asserts the other items all are general damages well within the $400,000 sought in the statement of damages.

First, both parties are mistaken in characterizing the award of damages for mental anguish as special, rather than general, damages. As earlier noted, general damages are those losses which naturally flow from the injury and which are not quantifiable by reference to bills or receipts. Thus, damages for pain, suffering and emotional distress are paradigmatic examples of general damages.

Two of the remaining items comprising the damage award, moving expenses and actual loss of earnings prior to the default hearing, are clearly special damages, as they are based on actual out-of-pocket losses proved by reference to receipts and business records. (See, e.g., *Tooke* v. *Allen* (1948) 85 Cal.App.2d 230, 238 [192 P.2d 804] [loss of earnings should be pleaded by way of special damage].) For similar reasons, the other two types of damages awarded, for the present cash value of future lost earnings and the present cash value of the lost future possessory interest in the rent controlled apartment, are general damages. Unlike the moving expenses and lost earnings, which compensate for actual monetary losses already incurred, these damages compensate for future losses that can be estimated but not fixed. Because these losses have not yet been incurred they cannot be proved by receipts, bills or other financial records, but are nonetheless awarded because they are considered a natural and proximate result of the eviction. As such, they are general damages. (*Stillwell Hotel Co.* v. *Anderson* (1935) 4 Cal.2d 463, 468-469 [50 P.2d 441] [loss of future possessory interest a natural and proximate result of eviction].)

In sum, the only special damages awarded were for moving expenses ($800) and for actual lost earnings prior to the October 1987 hearing ($2,000), a total of $2,800, well within the $25,000 of special damages sought in the statement of damages.

2. *Trebling of mental anguish award.*

Appellant argues the court improperly included the $20,000 awarded for mental anguish in the amount to be trebled under the Rent Ordinance. He asserts that because respondent did not include damages for mental anguish among the "actual and special damages" listed in paragraph 19 of his complaint the $20,000 awarded for pain and suffering ought to have been excluded from the sum trebled under section 37.9(f) of the Rent Ordinance,

because that section provides for the trebling of "actual damages." This argument is meritless.

■ First, "actual damages consist of both general and special damages." (Black's Law Dict. (5th ed. 1979).)[9] Thus, under the express language of the Rent Ordinance both general and special damages may be trebled. Second, the list of "actual and special damages" set forth in respondent's complaint is explicitly a partial list which begins by stating that "plaintiff incurred actual and special damages, including, but not limited to . . ." the items described. Finally, since respondent's statement of damages sought for a total of $425,000 in general and special damages and expressly indicated that he was seeking three times that sum—or $1,275,000—as statutory damages it is inconceivable appellant was not aware that he might be liable for a treble damage award of $188,844.

3. *Evidence of appellant's wealth.*

Appellant suggests the "punitive" damage award cannot stand because respondent did not introduce evidence of appellant's wealth. As previously noted, the court explicitly declined to award punitive damages because it considered the statutory treble damage award sufficient. ■ While there is some dispute as to whether a plaintiff must present evidence of a defendant's wealth to support a claim for punitive damages (compare *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 964 [192 Cal.Rptr. 219] and *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 404 [89 Cal.Rptr. 78, 47 A.L.R.3d 286] [plaintiffs need not introduce evidence of defendants' wealth] with *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262, 1268-1269 [262 Cal.Rptr. 311] and *People* ex rel. *Dept. of Transportation* v. *Grocers Wholesale Co.* (1989) 214 Cal.App.3d 498, 514-515 [plaintiffs have burden of presenting evidence of defendants' wealth]), there is no authority for the proposition that *statutory* damages—the amount of which is mandated by the Legislature—must be supported by evidence of the defendant's wealth. In such cases, evidence of the defendant's wealth is unnecessary since the court must award the amount set by statute and cannot use evidence of wealth or poverty to calculate a proper damage award. As such, respondent had no obligation to present evidence of appellant's ability to pay the damages awarded.

---

[9] Actual damages are further defined as "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed on the one hand to 'nominal' damages, and on the other to 'exemplary' or 'punitive' damages." (Black's Law Dict., *supra*, at p. 352.)

## D. *Denial of Motion for Relief from Default*

On January 13, 1988 a hearing was held on appellant's motion for relief from default under Code of Civil Procedure section 473.[10] At that time the court heard arguments from counsel and denied the motion, concluding appellant had not made the requisite showing of excusable neglect. Appellant now asserts this was error.

 "It is axiomatic that a motion for relief from default under section 473 is addressed to the sound discretion of the trial court. The exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." (*Martin* v. *Johnson* (1979) 88 Cal.App.3d 595, 604 [151 Cal.Rptr. 816].) "[A] party who seeks relief under section 473 on the basis of mistake or inadvertence of counsel must demonstrate that such mistake, inadvertence, or general neglect was excusable 'because the negligence of the attorney . . . is imputed to his client and may not be offered by the latter as a basis for relief.' The client's redress for inexcusable neglect by counsel is, of course, an action for malpractice." (*Carroll* v. *Abbott Laboratories* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775], citations omitted.)

 In the instant case appellant's counsel was warned on June 19, 1987 that a default would be taken on June 27. The default was in fact entered on July 1. Although appellant's counsel was informed that a prove-up hearing would be scheduled for October and was called by opposing counsel in September to ascertain whether he would be bringing a Code of Civil Procedure section 473 motion prior to the hearing, appellant's counsel did not take any steps to have the default set aside.

While appellant contends that his counsel's girlfriend's hospitalization led to the default, that does not explain why counsel failed to respond to the first amended complaint from February through June. Moreover, since counsel's friend was only hospitalized from June 20 to June 24, and was then released without restriction, it is not apparent why counsel was unable to respond between June 24 and July 1, when the default was entered. Finally, there is no reason offered for counsel's failure to promptly seek relief from the default once he returned to his business and realized his error.[11] Excusable neglect is an "act or omission which might have been

---

[10] This provision states that a court "may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect. Application for such relief . . . must be made within a reasonable time, in no case exceeding six months . . . ."

[11] *Stub* v. *Harrison* (1939) 35 Cal.App.2d 685 [96 P.2d 979], which appellant relies on in support of his claim, is distinguishable on this point alone. There, an attorney failed to answer a complaint because he was overwhelmed by his son's hospitalization. However, in

committed by a reasonably prudent person under the same circumstances." (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 279 [75 Cal.Rptr. 848].) In the absence of any reasonable explanation for the attorney's errors the court was entirely justified in finding the neglect inexcusable and denying appellant's request to be relieved of the default.[12]

Finally, appellant argues he was abandoned by his attorney and should therefore not be charged with or penalized for counsel's errors. In support of this claim he cites *Daley* v. *County of Butte* (1964) 227 Cal.App.2d 380 [38 Cal.Rptr. 693], where the court found the plaintiff's attorneys guilty of gross misconduct which resulted in dismissal of the action due to a lack of prosecution. Plaintiff moved for relief from default, which was denied. On appeal the court observed that the attorneys had never personally appeared on any motion or in any pretrial conference and had never communicated with the court concerning any of the calendar hearings or pretrial conferences pertaining to the case. The attorneys also held plaintiff's requested substitution of attorneys for over five months without acting on it until defendant moved for dismissal. Under these circumstances the court held the plaintiff had been deprived of effective representation and would not be charged with the misconduct of her "nominal counsel of record." (227 Cal.App.2d at p. 392.) Accordingly, the court reversed the trial court's denial of plaintiff's motion under Code of Civil Procedure section 473.

*Daley* is inapposite. Here, unlike counsel in *Daley*, Attorney Zimmerman continued to act, albeit ineffectively, as appellant's representative. For example, when Zimmerman finally realized on June 27 that a default was imminent, he phoned respondent's attorney and asked to have appellant relieved of the default. Soon thereafter respondent's attorney spoke with Zimmerman concerning settlement of the case. When respondent's counsel met Zimmerman in late August or September of 1987 he said he intended to bring a motion for relief under Code of Civil Procedure section 473. On September 24 Zimmerman repeated this intention to respondent's attorney during a telephone conversation. At the section 473 hearing appellant's new

---

*Stub*, unlike the instant case, the attorney moved quickly to correct his mistake and sought relief from default within four days following the entry of the default.

[12]*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491 [256 Cal.Rptr. 296] also provides no support for appellant's claim. In *Moyal* the court interpreted Code of Civil Procedure section 575.2 as an exception to the general rule that negligence of an attorney is imputed to the client. However, that case is easily distinguishable from this matter as Code of Civil Procedure section 575.2, subdivision (b) explicitly states that "if a failure to comply with [local court rules] is the responsibility of counsel and not of the party, any penalty shall be imposed on counsel and shall not adversely affect the party's cause of action or defense thereto." In contrast, there is no indication the Legislature intended that an attorney's negligence not be imputed to a client seeking relief from default. In fact, the Legislature's silence on the issue in the face of the many cases that do impute such negligence to the client suggests the Legislature is satisfied with the existing rule.

counsel explicitly admitted there were "ongoing settlement negotiations" between Zimmerman and respondent's counsel after the July 1 default.

In *Carroll* v. *Abbott Laboratories, supra,* 32 Cal.3d 892, our Supreme Court reviewed *Daley* and concluded that "the *Daley* exception should be narrowly applied, lest negligent attorneys find that the simplest way to gain the twin goals of rescuing clients from defaults and themselves from malpractice liability, is to rise to ever greater heights of incompetence and professional irresponsibility . . . ." (32 Cal.3d at p. 900.) With this guideline in mind we cannot say the court erred in concluding appellant had not been abandoned within the meaning of *Daley* v. *County of Butte, supra.*

■■■ At oral argument appellant's counsel informed the court and opposing counsel that an amendment to Code of Civil Procedure section 473 that became effective after the completion of briefing in this case made relief from default *mandatory* whenever the attorney attests that his mistake, inadvertence, surprise or neglect resulted in the default at issue. She argued that because appellant's trial counsel had sworn that the default resulted from his neglect appellant was entitled to the benefit of the amendment.[13]

In 1988, Code of Civil Procedure section 473 was amended to provide that: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is timely, in proper form, and accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect, vacate any resulting default judgment entered against his or her client unless the court finds that the default was not in fact caused by the attorney's mistake, inadvertence, surprise or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." This amendment became effective January 1, 1989.

The amendment changes the prior statute in two significant ways. While the preamendment statute provided that a court "may" relieve a party or his legal representative from a judgment taken through "mistake, inadvertence, surprise or excusable neglect," the amendment states that the court "shall" vacate any judgment resulting from an attorney's "mistake, inadvertence, surprise or neglect." Thus, while the prior law was discretionary, the amendment is couched in mandatory terms. Whereas the prior statute only recognized *excusable* neglect, the amendment provides relief for defaults founded on an attorney's neglect, regardless whether it may be characterized as excusable.

---

[13] The court permitted the parties to file supplemental briefs on this issue.

Appellant asserts that, pursuant to this amendment, relief from default must be granted unless the court finds the default did not in fact result from the attorney's mistake, inadvertence, surprise or neglect. The legislative history of the amendment supports that position;[14] respondent does not offer a contrary interpretation, but only argues the amendment ought not be applied retroactively to relieve appellant's default.

Code of Civil Procedure section 3 states that no part of the code is to be applied retroactively, "unless expressly so declared." Appellant acknowledges this principle and admits there is no legislative indication that the amendment to Code of Civil Procedure section 473 was intended to apply retroactively. He nonetheless argues the statute may be applied to this matter without violating section 3, because the amendment effects procedural, rather than substantive, changes.

As support for this position appellant relies primarily on *Hardy* v. *Western Landscape Construction* (1983) 141 Cal.App.3d 1015 [190 Cal.Rptr. 766]. In *Hardy* the plaintiffs failed to file a request for a trial de novo within 20 days following the filing of an adverse arbitration award, as provided in California Rules of Court, rule 1616(a). They moved for relief from default under Code of Civil Procedure section 473; the court denied the motion because it had no jurisdiction to grant such relief under that provision. Subsequently, the rules of court were amended to permit a party against whom a judgment is taken pursuant to an arbitration award to move to vacate the judgment under section 473.[15] The court concluded, without significant discussion, that "[t]he amended rule applies here because a procedural statutory change applies to all pending suits." (141 Cal.App.3d at p.

---

[14] The legislative history shows that the amendment as first proposed permitted relief based on "excusable" neglect; by the third draft the word "excusable" has been deleted without explanation. Because the word appears both in earlier drafts of the bill and in the existing language of the statute, it seems unlikely that the omission could have been inadvertent.

A memo concerning the amendment prepared by the Senate Committee on the Judiciary states that the purpose of the amendment is to "provide a basis for deterring the occurrence of default judgments." Another memo, prepared by the Senate Rules Committee, states that the bill would "properly burden[ ] the party whose inaction resulted in default" and concludes that "requiring an erring attorney to pay a sum to the client security fund will generally prove more satisfactory than precipitating yet more litigation in the form of malpractice suit[s]." Finally, a memo by the Assembly Committee on Judiciary states that the author of the bill, Senator Ed Davis, has asserted that because of increased case loads, courts have become reluctant to grant relief from default; Senator Davis is quoted as stating that the amendment will help ensure that a party "who is truly not at fault will not be held vicariously liable for an attorney's indiscretion." All of these materials support a literal interpretation of the amendment, i.e., that relief from default is mandatory once an attorney attests that his failure caused the default.

[15] Contrary to an assertion in a supplemental brief filed by appellant, *Hardy* did not retroactively apply an amendment to Code of Civil Procedure section 473; rather, it concerned an amendment to the rules of court.

1017.) In light of both preceding and subsequent case law, *Hardy* was wrongly decided and ought not be followed.

The seminal case on the issue in question is *Aetna Cas. & Surety Co.* v. *Ind. Acc. Com.* (1947) 30 Cal.2d 388 [182 P.2d 159], where the court reviewed an award of compensation made to an injured employee pursuant to a section of the Labor Code that had been amended after the date of the injury. The court concluded the commission had improperly applied the amendment retroactively, and reversed the judgment. In so doing, it considered at length the commission's argument that procedural changes may be applied retroactively. The court observed that the commission's contention was premised on the assumption that there is a clear-cut distinction between "procedural" and "substantive" legislation. "In truth," the court concluded, "the distinction relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. [Citations.]" (30 Cal.2d at p. 394.)

In *Nelson* v. *A. H. Robins Co.* (1983) 149 Cal.App.3d 862 [197 Cal.Rptr. 179] the court reached a similar conclusion, and declined to retroactively apply an amendment to Code of Civil Procedure section 581a. Despite the fact that the amendment neither created a new cause of action nor eliminated a defense (and thus might reasonably have been characterized as a procedural change), the court concluded that "[i]n the absence of a provision in the enactment expressly declaring or implying that it was to be given retroactive effect, it may not be construed in such manner that 'the legal effects of past events would be changed.'" (149 Cal.App.3d at p. 871, quoting *Aetna, supra,* 30 Cal 2d. 388, at p. 394.)

Finally, in *Russell* v. *Superior Court* (1986) 185 Cal.App.3d 810 [230 Cal.Rptr. 102] the court considered real parties' claim that the Fair Responsibility Act of 1986 (Proposition 51) was merely procedural, and thus should apply retroactively. The court stated, "[a]s *Aetna* makes clear, the distinction between 'substantive' and 'procedural' is a misdirection. Both types of statutes may affect past transactions and be governed by the presumption against retroactivity. The only exception which we can discern from the cases is a subcategory of procedural statutes which can have no effect on substantive rights or liabilities, but which affect only modes of procedure to be followed in future proceedings.[16] As *Aetna* pointed out,

---

[16] The court listed statutes involving rules of evidence in future trials, trial procedure, rules of service of process or the awards of costs or attorneys' fees upon entry of judgment as

such statutes are not governed by the retroactivity presumption, but not because they are 'procedural' but simply because they are not in fact retroactive. . . . *Aetna* may thus be read as drawing the true distinction not between 'substantive' or 'procedural' statutes, *but between those affecting past transactions and those impacting only on future events.*" (185 Cal.App.3d at p. 816, italics added.)

Based on the foregoing authorities, appellant's position, which rests on the assumption that "procedural" rules such as Code of Civil Procedure section 473 are retroactive, is overly simplistic and begs the key question whether past events will be affected by retroactive application of the amendment. If the amended version of section 473 were applied retroactively in this case, appellant would have an opportunity to go forward and defend this case on the merits, despite the fact that under the law existing at the time of the default judgment, he had clearly lost that right. As such, the retroactive application of this amendment would substantially affect substantive rights; under *Aetna* and its progeny this is impermissible. Accordingly, the amended version of Code of Civil Procedure section 473 cannot be applied retroactively to provide appellant relief from default.

E. *Attorney's Fees and Costs*

 Following oral argument in this matter respondent moved for an award of costs and reasonable attorney's fees on appeal. He maintains he is entitled to such an award based on a number of grounds, including (1) a provision in the parties' lease which provides for the payment to "owner or agent" of attorney's fees and costs for any action under the lease; and (2) Civil Code section 1717, which makes that provision reciprocal to allow for such an award to the tenant.[17] Appellant opposes the motion, arguing it is premature, in that there is no "prevailing party" before our judgment is issued. We are unpersuaded by this argument, and shall award respondent fees and costs incurred in connection with this appeal.

The lease at issue provides that "if any action or suit shall be brought by owner or agent for the recovery of any rent due, or to enforce any right hereby conferred, or for the recovery of possession of said premises, tenant shall pay to owner, or agent, such attorneys fees and costs as the Court shall

examples of statutes which do not affect substantive rights or liabilities. (185 Cal.App.3d at p. 816.)

[17] Respondent also cites Code of Civil Procedure sections 1021 and 1034, subdivision (b), California Rules of Court, rule 26 and section 37.9 of the San Francisco Administrative Code in support of his claim for attorney's fees and costs herein. As we have determined that the parties' lease and Civil Code section 1717 provide ample authority for such an award, we need not analyze respondent's rights under the other authorities noted.

determine to be reasonable." Civil Code section 1717, subdivision (a) makes this lease provision reciprocal by providing that "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, *whether he or she is the party specified in the contract or not,* shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.)

While respondent's action implicated provisions of the San Francisco Rent Ordinance, in our opinion the suit fundamentally was based upon the lease, in that respondent sought compensation for appellant's wrongful interference with respondent's occupation and enjoyment of the leased premises. Thus, the attorney's fees provision of the lease, through Civil Code section 1717, provides authority for our award to respondent, who clearly is the prevailing party herein.[18]

## F. *Disposition*

The judgment is affirmed. The cause is remanded to the trial court for a determination of an appropriate award of attorney's fees and costs to respondent.

Smith, J., and Benson, J., concurred.

---

[18] Appellant concedes that the prevailing party—whether it is appellant or respondent—will be entitled to an award of fees. He nonetheless asserts that, depending on our final disposition of the case, there could be some dispute as to who actually prevailed. Because we are affirming the judgment in its entirety there can be no doubt that respondent is the "prevailing party" for purposes of the award of attorney's fees and costs.