[No. B046179. Second Dist., Div. One. Nov. 16, 1990.]

SANDRA BILLINGS et al., Plaintiffs and Respondents, v. HEALTH PLAN OF AMERICA, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of parts III B and C.

COUNSEL

O'Flaherty & Belgum, Patty Mortl and John J. Weber for Defendant and Appellant.

Steven W. Herbert for Plaintiffs and Respondents.

OPINION

**ORTEGA, J.**—Following the sustaining of a demurrer, plaintiffs' attorney failed to file an amended pleading within 30 days and the complaint was dismissed. ■ ■ ■ ■ About five months later, plaintiffs successfully moved to vacate the dismissal based upon their attorney's affidavit of fault.

(Code Civ. Proc., § 473.)[1] In the published portion of this opinion, we hold that the 1988 amendment to section 473, which provides mandatory relief for defendants against whom default judgments are entered due to attorney neglect, does not apply to plaintiffs whose complaints are dismissed due to attorney neglect. We further conclude the 1988 amendment does not alter section 473's diligence requirement. In the unpublished portion of this opinion, we hold plaintiffs failed to diligently seek relief or demonstrate excusable neglect. We reverse the section 473 order and reinstate the order of dismissal.

I

FACTUAL HISTORY

On April 14, 1988, plaintiff Sandra Billings filed a complaint with causes of action for tortious breach of insurance contract, breach of the duty of good faith and fair dealing, breach of fiduciary duties, breach of statutory duties and intentional infliction of emotional distress. On May 11, 1988, plaintiffs Sandra Billings and Daniel Billings (plaintiffs) filed a first amended complaint adding Daniel Billings as a plaintiff. Defendant Health Plan of America (defendant) demurred and filed a motion to strike portions of plaintiffs' first amended complaint. On January 17, 1989, the court sustained the demurrer and granted plaintiffs 30 days' leave to amend their complaint. Defendant mailed notice of the ruling to plaintiffs' attorney, Mr. Herbert, on January 19, 1989.

After the 30 days had elapsed, defendant, in accordance with section 581, subdivision (f)(2), filed an ex parte application to dismiss. The court dismissed the action on March 8, 1989, and ordered plaintiffs to pay defendant's costs. Notice of the order of dismissal was mailed to Mr. Herbert on March 14, 1989. Approximately five months later on August 10, 1989, plaintiffs filed both an amended complaint and a motion to set aside the dismissal under section 473.

To establish that the dismissal had resulted from mistake or inadvertence, plaintiffs submitted a declaration by their attorney, Mr. Herbert. Mr. Herbert declared in part:

"I am a sole practioner and I hired attorney [Mr.] Nelms as an associate in this office in May 1988. Mr. Nelms was assigned to the instant action and

[1] This order is appealable. (*Colby* v. *Pierce* (1936) 15 Cal.App.2d 723, 725 [59 P.2d 1046].)
All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

had indeed made the appearance at the motions of defendants Health Plan of America. [¶] Notice of Ruling [sustaining defendant's demurrer and granting plaintiffs 30 days to amend] was sent out by defendants and apparently went directly to Mr. Nelms. [¶] According to my secretary Ina, who was the secretary working with Mr. Nelms, Mr. Nelms indicated to her that the same would, of course be taken care of, and to proceed with obtaining responses from our clients for discovery which had been propounded by defendants Health Plan of America, i.e. Interrogatories and Request for Production of Documents. [¶] Mr. Nelms ended his employment with my office on or about March, 17, 1989. [¶] I then hired another attorney to assist in my office, and she began her employment on March 27, 1989. [¶] Once she began her review of what was left behind on Mr. Nelms['] desk she discovered that Mr. Nelms had failed to file an amended complaint, and therefore placed a telephone call to opposing counsel in order to obtain an extension to respond. She was advised at that time that a request for dismissal had been made by defendant Health Plan of America and granted on or about March 8, 1989. [¶] Accordingly, she searched further through Mr. Nelms['] old office and discovered a copy of the [ex parte] application [of] defendant Health Plan of America for dismissal. [¶] Upon discussion with my secretary Ina, she indicated that she was [led] to believe that everything was in order and that Mr. Nelms had caused the proper documents to be filed and/or request for extensions to be made and she did not cause the same to be placed on her calendar. [¶] Therefore, due to error and inadvertance the amended complaint was not filed and I feel this is not a reason to dismiss a defendant. [¶] . . . [¶] Accordingly, there were several calendaring errors made by this counsel's associate counsel, [Mr.] Nelms, and plaintiffs should not be made to suffer the adverse consequences of dismissal of defendant Health Plan of America from their action, due to the mistake and/or inadvertence of plaintiffs' counsel."

No reasons were given in the declaration to explain the delay in filing the section 473 motion. Defendant filed evidentiary objections to Mr. Herbert's declaration on October 4, 1989.

The section 473 motion was heard on October 12, 1989. At the hearing Mr. Herbert was questioned by the trial court concerning the lengthy delay in seeking relief from the dismissal. Mr. Herbert responded: "[T]o be frank with the court, your Honor, my office has had a heavy press of business the last several months. She [Ms. Alvarado] was working on that. It should have been filed sooner." Mr. Herbert further stated: "Ms. Alva[ra]do was given this specifically to work on, and she did prepare the motion. I don't know why it took so long. I know she was working on it starting in April. And she is no longer with my office, your Honor. But she was given that, was told that it was important and she said that she was working on it. I

was not aware that it took quite that long before it was finally filed." This is the only showing made by plaintiffs concerning the lengthy delay in filing the motion under section 473.

The court granted the plaintiffs' motion and ordered the dismissal to be set aside. From that order defendant now seeks relief from this court.

## II

### ISSUES

Defendant contends the trial court abused its discretion in granting relief under section 473 because (A) the 1988 amendment to section 473 only applies to default judgments, (B) plaintiffs' motion was not timely filed and (C) plaintiffs failed to make any showing of mistake or inadvertence.

## III

### DISCUSSION

A.  *1988 Amendment*

While a motion for relief under section 473 is routinely addressed to the sound discretion of the trial court (*Outdoor Imports, Inc.* v. *Stanoff* (1970) 7 Cal.App.3d 518, 522 [86 Cal.Rptr. 593]), the 1988 amendment to section 473 (the amendment) creates a limited exception to the court's discretionary power. The 1988 amendment provides in part that: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is timely, in proper form, and accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect, vacate any resulting default judgment entered against his or her client unless the court finds that the default was not in fact caused by the attorney's mistake, inadvertence, surprise or neglect . . . ."

■  Ordinarily, a party seeking relief under section 473 from a judgment, order or other proceding has the double burden of showing (1) diligence in making the motion after discovering its own mistake, and (2) a satisfactory excuse for the occurrence of that mistake. (*Kendall* v. *Barker* (1988) 197 Cal.App.3d 619, 625 [243 Cal.Rptr. 42].) The court must generally consider the facts and circumstances of a case to determine whether the party was diligent in seeking relief (*Mercantile Collection Bureau* v. *Pinheiro* (1948) 84 Cal.App.2d 606, 609 [191 P.2d 511]), and whether the reasons given for the party's mistake are satisfactory.

■ However, under the amendment the court is not concerned with the reasons for the attorney's mistake. (See Weil and Brown, Cal. Practice Guide: Civ. Proc. Before Trial (Rutter 1990) Defaults, §§ 5:182.1-5:182.16 (hereafter Weil and Brown).) An application for relief under the amendment based on an attorney's mistake, inadvertence, surprise or neglect must be (1) made from a default judgment,[2] (2) filed in a timely fashion, (3) prepared in proper form, and (4) accompanied by an attorney's sworn affidavit attesting to fault. (Code Civ. Proc., § 473; see Weil and Brown, *supra*, § 5:182.2.) The court must also find that the default was actually caused by the attorney's mistake, inadvertence, surprise or neglect. (*Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1605 [265 Cal.Rptr. 719].) Where it is determined that these requirements are met, the court must vacate the default judgment. (See Weil and Brown, *supra*, § 5:225.)

■ Plaintiffs contend the mandatory provisions of the amendment apply to orders of dismissal as well as to default judgments. This contention lacks merit. The amendment, as plainly written, solely applies to default judgments caused by an attorney's mistake, inadvertence, surprise or neglect.

Plaintiffs urge us to construe the amendment to implicitly encompass orders of dismissal. Plaintiffs point out that the paragraph of section 473 which contains the amendment indicates that the entire paragraph applies to any "judgment, order or proceeding." However, the amendment explicitly applies only to default judgments. ■ And where the statutory language is clear and unambiguous, there is no need for construction. (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

■ Moreover, even assuming an ambiguity exists, plaintiffs have offered no evidence that the Legislature intended the amendment to apply to other orders, proceedings or judgments, or that some policy consideration requires such construction. In fact, the legislative history of the amendment cautions against accepting plaintiffs' interpretation. Senate Bill (hereinafter SB) No. 1975, which enacted the amendment, expressly provided from its inception that the court shall vacate any resulting *"default judgment"* where the appropriate requirements are met. (Italics added.) ■■■■ While the Legislative Counsel's Digest (Digest) initially

---

[2] While the issue is not before us, we note that the amendment's reference to "default judgments" could be construed to preclude mandatory relief when only the default, as opposed to the default judgment, has been entered. (See, however, Weil and Brown, *supra*, § 5:182.7 ["This appears to be a legislative oversight. There seems [to be] no logical reason why defendant's attorney *should have to wait until a judgment is entered*—and additional costs are incurred—before obtaining this relief."].)

indicated that the bill would apply to any "judgment, order, or other proceeding," the Digest was subsequently revised to indicate that the bill would only apply to default judgments.[3]

■ ■■■ Further evidence of legislative intent may be gleaned from the comments of the Senate Committee on the Judiciary.[4] A committee memo states that the amendment's purpose is to " 'provide a basis for deterring the occurrence of default judgments.' " (*Beeman* v. *Burlong, supra,* 216 Cal.App.3d at p. 1605, fn. 14.)

■ We know of no committee report which indicates the amendment's purpose is to deter the occurrence of dismissals that are caused by attorney neglect. Nor have we found any published appellate decisions on this point. However, the authors of a practice guide who considered the question have stated: "The amendment primarily benefits defense counsel. There is *no equivalent provision for mistakes by plaintiffs' counsel!* (For example, relief is not mandatory where a complaint is *dismissed* for plaintiff's counsel's *failure to amend* after a demurrer is sustained.)" (Weil and Brown, *supra,* § 5:182.7a, at p. 5-31.)

While the amendment's narrow scope may appear at first glance to be arbitrary, we cannot conclude it necessarily resulted from legislative oversight. It is easy to imagine the disastrous financial losses that may result when attorney neglect causes a default judgment to be entered against an unsuspecting defendant. While attorney negligence obviously affects plaintiffs as well, and may wreak havoc on their chances of recovery, the Legislature may have concluded that a plaintiff's loss of future gain, while serious and disturbing, lacks the urgency of a defaulting defendant's immediate loss of property or other rights. For these reasons, we hold that plaintiffs may not seek mandatory relief under the amendment.

---

[3] The initial Digest was printed in the first version of SB No. 1975 which was introduced in the Senate on February 9, 1988. Following amendments by the Senate Committee on the Judiciary, the revised Digest, which indicated the bill would only apply to default judgments, appeared in the August 1, 1988, version of SB No. 1975 which was approved by the Assembly Committee on the Judiciary. Thereafter, the revised Digest also appeared in the final version of SB No. 1975 which was respectively adopted by the Assembly and Senate on August 11 and 23, 1988.

Explanatory comments in the Digest may appropriately be considered by courts to determine legislative intent if the language of a statute is ambiguous. It will be presumed that the Legislature adopted the proposed legislation with the intent and meaning expressed in the committee reports. (*California Teachers' Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606, 613 [190 Cal.Rptr. 453].)

[4] "It has long been the rule that 'Statements in legislative committee reports concerning the statutory objects and purposes, which are in accord with a reasonable interpretation of the statute, will be followed by the courts." (*Maben* v. *Superior Court* (1967) 255 Cal.App.2d 708, 713 [63 Cal.Rptr. 439].)

Moreover, regardless of the amendment's limited scope, plaintiffs were not diligent in seeking relief, as is established in section II of the unpublished portion of this opinion. The 1988 amendment does not alter the diligence requirement of section 473.[5] "Notwithstanding the fact relief is mandatory when an 'attorney affidavit of fault' accompanies a section 473 motion [], the court can still refuse to entertain the matter if the motion itself is not timely . . . ." (Weil and Brown, *supra*, § 5:212.1.)

The amendment expressly requires the "timely" filing of an application for relief. Plaintiffs contend that "timely," as contained in the amendment, refers only to the six-month statutory limit of section 473, but not to the "reasonable time" limit also provided within the same sentence. However, this court may not arbitrarily incorporate certain requirements of the statute and discard others. There is no indication that the amendment was intended to relax the diligence required of a party seeking relief. ■ It is generally presumed that the Legislature has knowledge of existing domestic judicial decisions and enacts and amends statutes in light of such directly applicable decisions. (*Estate of Banerjee* (1978) 21 Cal.3d 527, 537 [147 Cal.Rptr. 157, 580 P.2d 657].) We presume the Legislature knew of section 473's well-established diligence requirement, and would have directly modified the requirement had it intended to do so. (*Ibid.*)

■ Policy considerations also require that the same diligence standard be applied to the amendment. Expanding the time within which a party may seek relief after learning of the default judgment, beyond what is deemed reasonable by the trier of fact in each case, would be unwise. It would encourage chronic procrastination and irresponsibility by litigants and their attorneys and thwart vital policies which "favor getting cases to trial on time, avoiding unnecessary and prejudicial delay, and preventing litigants from playing fast and loose with the pertinent legal rules and procedures." (*Gardner* v. *Superior Court* (1986) 182 Cal.App.3d 335, 339 [227 Cal.Rptr. 78].)

---

[5] "In order to qualify for relief under section 473, the moving party must act diligently in seeking relief . . . ." (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 234 [211 Cal.Rptr. 416, 695 P.2d 713].) Section 473 provides that applications for relief must be "made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken." It has long been the law in California that a party must be prompt in seeking relief under section 473. Delays of three months or more routinely result in denial of relief where there is no explanation for the delay. (*Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316, 322 [101 Cal.Rptr. 615].) As our Supreme Court stated in *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 529 [190 P.2d 593]: "Courts do not relieve litigants from the effects of mere carelessness. Defendant has not cited, nor has independent research disclosed, any case in which a court has set aside a default where, in making application therefor, there has been an unexplained delay of anything approaching three months after full knowledge of the entry of the default."

For these reasons plaintiffs are not entitled to relief under the mandatory provisions of the 1988 amendment to section 473.

B, C*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

We reverse the order setting aside the dismissal and reinstate the order of dismissal. Defendant is entitled to recover costs on appeal.

Spencer, P. J., and Vogel, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 1991. Mosk, J., was of the opinion that the petition should be granted.

---

* See footnote, *ante*, page 250.