[No. B070517. Second Dist., Div. Four. Jan. 31, 1995.]

METROPOLITAN SERVICE CORPORATION, Plaintiff and Respondent,
v.
CASA DE PALMS, LTD., et al., Defendants and Appellants.

COUNSEL

James H. Sloey for Defendants and Appellants.

Robert M. Burk for Plaintiff and Respondent.

OPINION

**VOGEL (C. S.), J.**—Defendants and appellants Casa de Palms, Ltd., Tumanjan Development Corporation, Michael Tumanjan, and George Tumanjan appeal from a default judgment in favor of plaintiff and respondent Metropolitan Service Corporation and from an order denying defendants' motion pursuant to Code of Civil Procedure section 473 to set aside the default.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Metropolitan Service Corporation secured a stipulated judgment in 1989 against defendants Casa de Palms, Ltd., and Tumanjan Development Corporation for $32,000.

On February 4, 1992, Metropolitan filed its complaint in the instant case to amend the stipulated judgment to include defendants Michael Tumanjan and George Tumanjan as judgment debtors on the ground they operated defendant Tumanjan Development Corporation as their alter ego.

Defendants' attorney James H. Sloey agreed to accept service of the complaint. On February 5, 1992, plaintiff's attorney Robert Burk sent Sloey the summons, complaint, notice and acknowledgement of service. Sloey

---

[1]All statutory references are to the Code of Civil Procedure.

executed acknowledgement of service on March 5, 1992, and mailed the acknowledgement to Burk on March 6, 1992. In his cover letter, Sloey stated: "Please find enclosed our Acknowledgement of Receipt. I am sorry that it has taken so long, I have been extremely busy and am in the middle of two (2) fast track lawsuits at the present time. In the event I need some extra time, I would certainly appreciate if I could give you a call and you could extend me some additional time. In any event, I anticipate having an answer to you no later than April 6, 1992."

Sloey did not file an answer on defendants' behalf by April 6, 1992, nor did he contact Burk to request an extension. Plaintiff immediately requested entry of defendants' default, on April 7, 1992.

On April 9, 1992, Sloey telephoned Burk to request that the default be set aside, which Burk refused.

On June 10, 1992, the court entered judgment on the default. On the same date, defendants filed their motion to set aside default pursuant to section 473, setting the hearing for July 16, 1992.

In the memorandum in support of the motion, defendants cited the first sentence of the third paragraph of section 473 (discretionary relief), which provided, "The court may, upon such terms as may be just, relieve a party or his or her legal representative from a judgment, order or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect." In support of the motion, defendants submitted the declaration of Attorney Sloey, under penalty of perjury, executed June 8, 1992, stating: "I have been engaged in a pre-trial civil proceeding during the past six (6) weeks. This matter has virtually taken every minute of time. Knowing this, in my letter of March 6, 1992, addressed to PLAINTIFF's counsel, a copy of which is attached as Exhibit 'A', I clearly indicated that I may need additional time to answer PLAINTIFF's Complaint. [¶] . . . Notwithstanding same, PLAINTIFF's counsel immediately filed his Request for Entry of Default without ever telephoning my office once in an attempt to ascertain if I was going to file an Answer or if I did in fact need some additional time. Based upon same, I respectfully requested PLAINTIFF's counsel to set aside the defaults entered against DEFENDANTS herein. My request was absolutely and flatly refused by PLAINTIFF's counsel. [¶] . . . I have prepared DEFENDANTS' proposed Answer to Complaint which is submitted herewith as Exhibit 'B' and which is incorporated herein by this reference. I would, therefore, respectfully request this Court to allow its

filing and further order that it be deemed served upon PLAINTIFF's counsel as of the date of this hearing."

Plaintiff filed opposition to the motion on July 6, 1992, supported by a memorandum of points and authorities and the declaration of plaintiff's attorney Burk. Burk's declaration recited some of plaintiff's efforts since 1989 to enforce the stipulated judgment, and alleged defendants had at all times delayed and hindered enforcement. Plaintiff's argument was summarized in the memorandum's statements that defendants "have failed to sustain[] the burden of showing that the default entered herein was entered through mistake, inadvertence, surprise or excusable neglect," that Attorney Sloey's declaration he had no time to file an answer was vague and insufficient, and that the real reason for failure to timely answer the complaint was to hinder and delay plaintiff's enforcement of the judgment. Plaintiff's memorandum made the following various points of law: (1) (citing *Billings* v. *Health Plan of America* (1990) 225 Cal.App.3d 250, 256 [275 Cal.Rptr. 80]) there was a "lack of causation between the attorney's conduct and the taking of the default," (2) there was no mistake, inadvertence, or surprise because Sloey was well aware of the deadline and necessity to file an answer, (3) the press of Sloey's other business was insufficient to show excusable neglect, particularly in light of the vagueness of Sloey's declaration that his other unidentified case took "virtually . . . every minute" of his time, and (4) the motion was not "in good faith" because it represented merely a continuing effort to delay.

Plaintiff's memorandum concluded that if the court nevertheless decided to grant the motion for relief from default the court should impose the following costs and penalties: (1) if the motion was granted in the court's discretion, the court should condition the order on such terms as may be just, but (2) if relief was based on "an attorney's affidavit of fault," (a) the court *must* direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel and parties, and (b) the court may additionally impose a penalty up to $1,000 on the offending attorney or direct the attorney to pay up to $1,000 to the State Bar Client Security Fund.

The latter references to an attorney's affidavit of fault are based on legislative amendments to section 473 commencing in 1988, which, unlike the discretionary portion of section 473, *require* the court to grant relief if an attorney files a sworn affidavit attesting to the attorney's mistake, inadvertence, surprise, or neglect. These provisions (mandatory relief) currently provide: ". . . Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six

months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect. The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties. However, this section shall not lengthen the time within which an action shall be brought to trial pursuant to Section 583.310. [¶] Whenever the court grants relief from a default, default judgment, or dismissal based on any of the provisions of this section, the court may: (1) impose a penalty of no greater than one thousand dollars ($1,000) upon an offending attorney or party, (2) direct that an offending attorney pay an amount no greater than one thousand dollars ($1,000) to the State Bar Client Security Fund, or (3) grant other relief as is appropriate. [¶] However, where the court grants relief from a default or default judgment pursuant to this section based upon the affidavit of the defaulting party's attorney attesting to the attorney's mistake, inadvertence, surprise, or neglect, the relief shall not be made conditional upon the attorney's payment of compensatory legal fees or costs or monetary penalties imposed by the court or upon compliance with other sanctions ordered by the court. . . ."

The motion was heard and denied on July 16, 1992. The court indicated orally that defendants' moving papers did not "[bring] you within the code section," that "the default was entered April 7th and you brought this motion two months later without really giving the court any reasonable excuse," and "just because an attorney is busy, that generally is not a good enough excuse to set aside a default. And that of course is the only reason you've given us, so the cases just don't uphold that position. . . . I[] mean if you've given me something more to go on . . . ."

## DISCUSSION

■ Defendants contend that under the mandatory provisions of section 473, the court was required to grant relief based on Attorney Sloey's declaration of his neglect to timely answer the complaint. We agree.

■ Under the traditional *discretionary* provisions of section 473, a party seeking relief on the basis of its attorney's neglect must show that the

neglect was *excusable*. The attorney's inexcusable neglect was traditionally imputed to the client, whose redress was a malpractice action against the attorney. (*Beeman* v. *Burling* (1990) 216 Cal.App.3d 1586, 1602 [265 Cal.Rptr. 719].) The press of an attorney's other business has not been considered excusable neglect. (*Fairfield* v. *Ahlstrom* (1962) 206 Cal.App.2d 590, 592 [24 Cal.Rptr. 70].) In addition, section 473 expressly requires that an application for discretionary relief be filed "within a reasonable time, in no case exceeding six months" after the judgment or order was taken. This imposes an obligation to exercise diligence to seek relief promptly after learning of the default. (*Billings* v. *Health Plan of America, supra*, 225 Cal.App.3d 250, 255.)

Under the traditional standard, the trial court was well within its discretion in concluding defendants made an insufficient showing of diligence in seeking relief (two-month delay) or of excusable neglect (attorney busy on other cases).

An entirely different standard exists under the *mandatory* relief provisions enacted in 1988. These *require* the court to grant relief if the attorney admits neglect, even if the neglect was *inexcusable*. (*Beeman* v. *Burling, supra*, 216 Cal.App.3d at pp. 1604-1605, & fn. 14; *Billings* v. *Health Plan of America, supra*, 225 Cal.App.3d at p. 256; *Rogalski* v. *Nabers Cadillac* (1992) 11 Cal.App.4th 816, 821 [14 Cal.Rptr.2d 286].) The purpose of this law is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits. (*Beeman* v. *Burling, supra*, 216 Cal.App.3d at p. 1605, fn. 14.) Furthermore, in 1991, the Legislature modified the timeliness/diligence requirement. Whereas the 1988 version required the application for mandatory relief to be "timely," which the *Billings* court construed to incorporate the diligence requirement (225 Cal.App.3d at p. 258), the current version requires only that the application be made within six months after entry of judgment. (*Douglas* v. *Willis* (1994) 27 Cal.App.4th 287, 292 [32 Cal.Rptr.2d 408].)

The two reasons given by the trial court here (two-month delay in seeking relief and inexcusable attorney neglect) are not valid grounds for denying a motion for mandatory relief. The only exception to mandatory relief is when the trial court "finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473; e.g., *Rogalski* v. *Nabers Cadillac, supra*, 11 Cal.App.4th at p. 821 & fn. 5 [default occurred before attorney represented defaulting party].) The

trial court here made no such finding, and it is clear from Attorney Sloey's declaration that the default occurred because he neglected to file an answer to the complaint on defendants' behalf.

Although defendants' memorandum of points and authorities referred to the discretionary provisions of section 473, plaintiff's own memorandum in opposition directed the court's attention to the mandatory provisions based on an attorney's affidavit of fault. Under the circumstances, the trial court should have considered the mandatory provisions, which do not require a showing that the attorney's neglect was excusable nor a showing of diligence short of the six-month time limit. Defendants' moving papers contained all that was required to show defendants' entitlement to mandatory relief. The motion was filed within six months of the entry of default judgment and contained Attorney Sloey's sworn declaration of his own neglect to answer the complaint.

Plaintiff suggests the motion could be denied on the ground that the default was "not in fact caused" by Sloey's neglect. This argument is unpersuasive. The default was literally caused by Sloey's failure to answer the complaint on defendants' behalf. Plaintiff apparently contends that because defendants previously resisted efforts to enforce the prior stipulated judgment, the failure to answer the complaint was part of a scheme to hinder and delay plaintiff by abusing the judicial process. On the face of it, allowing a default to be taken against defendants is not a rational device by which to hinder and delay the plaintiff. If plaintiff means that defendants deliberately defaulted, with a premeditated plan to have the default set aside later, the hearing in the trial court does not suggest the court believed defendants acted in such a diabolical way. The policy of the law favors determination on the merits, not by default. (*Elston* v. *City of Turlock* (1985) 38 Cal.3d 227, 233, 235 [211 Cal.Rptr. 416, 695 P.2d 713].) Defendants' prior resistance does not entitle plaintiff to a default judgment, and the issue whether defendants Michael Tumanjan and George Tumanjan can be individually liable on an alter ego theory for the prior judgment against Tumanjan Development Corporation should be determined on its merits.

We conclude the trial court was required to grant relief from default based on the mandatory portions of section 473. On remand, the court is required by those provisions to direct Attorney Sloey to pay reasonable compensatory legal fees and costs to plaintiff or its attorney. The court in its discretion may also consider penalties of no more than $1,000 or other appropriate relief.

## DISPOSITION

The default judgment and the order denying relief from the default are reversed. On remand, the trial court is directed to impose reasonable compensatory legal fees and costs as required by the mandatory provisions of section 473, and to consider in its discretion whether penalties or other relief authorized by section 473 should be imposed. Costs on this appeal are awarded to defendants.

Woods (A. M.), P. J., and Epstein, J., concurred.

A petition for a rehearing was denied February 21, 1995.