Filed 6/26/15  Velediaz v. City of Santa Ana CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NATALIA VELEDIAZ, | |
| Plaintiff and Appellant, | G049457 |
| v. | (Super. Ct. No. 30-2013-00662848) |
| CITY OF SANTA ANA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Reversed and remanded.

Law Offices of Farrah Mirabel and Farrah Mirabel; Law Offices of Pauline E. Villanueva and Pauline E. Villanueva for Plaintiff and Appellant.

Sonia R. Carvalho, City Attorney and Laura A. Rossini, Assistant City Attorney, for Defendants and Respondents.

Natalia Velediaz was a passenger, in a vehicle Erasmo Cervantes was driving, when they were injured in an auto collision involving a City of Santa Ana employee. The City of Santa Ana (hereafter the City) received a claim form stating the "claimant" was "Erasmo Cervantes et[] al." The claim form did not mention Velediaz's name, however, attached to the claim were copies of medical bills relating to both Velediaz and Cervantes. When the City notified Cervantes it denied his claim, Velediaz's counsel realized the City did not believe it had received a claim from Velediaz. Counsel filed an application for leave to file a late claim pursuant to Government Code section 911.4.[1] The City denied the application, prompting Velediaz to file a lawsuit in Superior Court, a motion for relief under Code of Civil Procedure section 473, and a petition for an order relieving her from the claim filing requirements of section 945.4.

The trial court denied Velediaz's motion on the grounds Code of Civil Procedure section 473, subdivision (b), did not apply. After carefully examining the record, it does not appear the court exercised its discretion with respect to Velediaz's Petition for Relief made under section 946.6. And although mandatory relief was not available to Velediaz under Code of Civil Procedure section 473, the matter must be reversed because the court by failed to exercise its discretion and consider the required elements of a timely filed section 946.6 petition. The matter is reversed and remanded for further proceedings.

I

On May 16, 2012, Velediaz and Cervantes were injured in an automobile collision in the City of Santa Ana. Their vehicle was stopped in a left hand turn lane when they were struck head on by a police officer's car. Officer Kenney Aguilar was on duty when he swerved and skidded into Cervantes's vehicle to avoid a third vehicle

---

[1] All further statutory references are to the Government Code, unless otherwise indicated.

2

making a fast left hand turn in front of him.  The third party fled the scene.  Pursuant to section 911.2, Cervantes and Velediaz were required to file a written claim for damages to the City within six months of the collision, i.e., by November 15, 2012.

On July 27, 2012, the City received a claim form.  The standardized form asked the "claimant" several questions about the claim.  The first paragraph asked for the name, address, and telephone number of the "claimant."  In this case, the name written on the form was "Erasmo Cervantes et[] al."  The claimant provided one address, "2027 W. Lingan," and one phone number.  Although not requested, the claimant wrote down, "Date of Birth:  [February 22, 1949]."

The second paragraph requested the name and address "to which notices should be sent, if other than above.  If represented by an attorney, provide attorney information."  The claimant provided the name and address of the Law Offices of Farrah Mirabel.

The third paragraph requested information about the date, place, and circumstances from which the claim arose.  The claimant stated it was a motor vehicle claim, provided the date of occurrence, and indicated details about the circumstances could be found in the attached police reports.

The fourth paragraph asked for a general description about the "indebtedness, obligation, injury, damage or loss incurred."  In this section, the claimant wrote "Hospital & Medical Bills" and "Property Damage."

The fifth paragraph asked for the name of the employee or department causing the claim.  Written in this section was, "Officer Kenney Aguilar."

The sixth paragraph asked two questions relating to the amount being claimed.  If the amount claimed totaled less than $10,000, the claimant was asked to write the estimated amount.  If the claim exceeded $10,000, the claimant was asked to indicate if the case would be a limited civil case (where recovery did not exceed $25,000), or an

3

unlimited civil case. In the case before us, the claimant checked the box stating it was an unlimited civil case involving the recovery of more than $25,000.

In the remaining paragraph, the claimant stated the name and contact information for witnesses could be found in the attached police report. When asked for the name, address, and telephone numbers of treating doctors or hospitals, the claimant wrote "Coastal Community Hospital." The claimant wrote the name of an automobile insurance company and provided a policy number. And finally, the claim form asked for a diagram of the accident. At the end of the form, is a place for the signature of the claimant. Mirabel signed the form and added the handwritten notation, "atty. in [*sic*] behalf of our client."

Attached to the claim form were the following documents: (1) the traffic collision police report; (2) a $90.45 pharmacy bill with no other identifying information; (3) a $861.25 Coastal Community Hospital bill relating to Velediaz; (4) a $1,698.50 Coastal Community Hospital bill relating to Cervantes; (5) four patient prescription information pages relating to medication provided to Velediaz that totaled $85.66; and (6) several documents written in Spanish from Coastal Community Hospital. The medical bills showed Cervantes was using an address at 2027 Lingan Lane in Santa Ana, and Velediaz was using an address at 1622 West 2nd Street in Santa Ana.

On January 17, 2013, the City notified Cervantes that it rejected his claim. Mirabel, who was representing both Cervantes and Velediaz, contacted the City after receiving the denial letter to ask about Velediaz's claim. The City advised Mirabel that it had not received Velediaz's claim.

Four months later, on May 13, 2013, Mirabel filed an application for leave to file a late claim. On May 23, 2013, the City denied the application.

On July 16, 2013, Mirabel filed a personal injury action in superior court on behalf of both Cervantes and Velediaz. On September 13, 2013, Velediaz filed a motion for relief under Code of Civil Procedure section 473 (hereafter 473 Motion), and a

4

petition for an order relieving Velediaz from the claim statute (hereafter 946.6 Petition).

In the 473 Motion, Velediaz maintained that "[t]hrough mistake and inadvertence" her counsel filed her claim under the name "Erasmo Cervantes et al." but included Velediaz's medical bills and a police report clearly reflecting there were two injured parties making a claim. She maintained the attorney declaration admitting there had been a mistake mandated relief. She asked the court to "grant her relief from" section 945.4 so that she could proceed with the action in court.

Mirabel filed a supporting declaration stating, "Through my office staffs' mistake and inadvertence, the claim form, furnished by the City . . . was filled in the name of 'Erasmo Cervantes et al.' The 'et al.' was obviously intended to include the names of both claimants without actually listing them both on the form." Mirabel asserted she did not become aware of the "clerical error" until she received the denial letter, which only mentioned Cervantes's claim. Mirabel noted the denial letter was sent two days after the six-month claims deadline. Mirabel contacted "City representatives" and learned "no claim was accepted" for Velediaz and the City did not send a notice of deficiency about her claim. Mirabel stated that after the City denied the application to file a late claim, she sought to preserve Velediaz's action by filing a personal injury complaint on behalf of both Velediaz and Cervantes in superior court. Mirabel concluded, "The error committed by my office staff and unnoticed by me was wholly inadvertent and unintentional."

In the separately filed 946.6 Petition, Mirabel asserted the required showing for relief under section 946.6 was the same as what was required for Code of Civil Procedure section 473's discretionary relief provisions. Mirabel asserted that omitting Velediaz's name from the claim form was "nothing more than a minor clerical error" and the City did not suffer any prejudice. She argued there were "numerous factors" substantiating "[Velediaz's] position that she substantially complied with all notice and filing requirements because she transmitted copies of her own records along with . . .

5

Cervantes' claim. The City is therefore estopped from asserting that the determinative factor lies in the title of the application. Instead, it is evident that [Velediaz] substantially complied with all notice and claim requirements." Mirabel filed a supporting declaration similar to the one filed in support of the 473 Motion.

The City filed an opposition to the 946.6 Petition and concurrently filed a request that the court take judicial notice of Velediaz's petition. The City argued Velediaz's petition was based on the assumption the only problem with the claim form was her counsel's inadvertent failure to include her name. However, the claim form also omitted Velediaz's address, injuries, and a stated amount of damages required by section 910. The City stated it would be prejudiced because it "ended up agreeing to settle the case with . . . Cervantes, prior to [Velediaz] filing her application to present a late claim. The [City] generally likes to resolve all claims regarding the same incident at the same time to the extent possible and if settlement is warranted. [City] staff would have likely approached settlement of . . . Cervantes' claim differently had they known that [Velediaz] would have a claim as well."

To support the opposition, the City's risk management technician, Briza Morales, filed a declaration. Morales stated her job duties included processing claims, evaluating claims, and corresponding with claimants. Morales recalled she spoke with Mirabel's office manager, Alvaro Melo, on January 15, 2013. Morales told Melo the City did not have a claim submitted on behalf of Velediaz. On January 17, 2013, Morales sent Mirabel a letter stating Cervantes' claim was denied. In April 2013 Morales negotiated a settlement of Cervantes' claim. Morales stated she would have approached settlement differently if she had known there was a second claim for the same incident.

Velediaz filed a reply stating the opposition "insinuates" Cervantes' claim had been settled, but it was not. She concluded the City's claim of prejudice was "disingenuous." She also argued the City knew her attorney made a mistake and it was

6

under an obligation to inform her of the defect. Mirabel's office manager, Melo, submitted a supporting declaration stating Morales's declaration was inaccurate.

Melo declared, "Morales is well aware that under Mirabel's supervision, I was negotiating with her regarding both Plaintiffs' claims from the time she received . . . Cervantes' claim. I called the City several times between July and November 2012 and at no time did anybody tell me that the form was defective and 'et al.' was not acceptable for the name of [Velediaz]. The first time . . . Morales informed me that there was a mistake was in January 2013, around the same time we received the rejection letter for . . . Cervantes. [Morales] told me that we had made a mistake but nonetheless, Cervantes's claim was rejected and Velediaz's claim not accepted. Then she told me that there was a chance she could make offers to settle both claims, but it was out of her hands and [she] needed to talk to her superiors. Accordingly, [Cervantes and Velediaz] held out hope for an impending resolution. But instead, after three months, in April 2013, [Morales] made only one offer for [Cervantes]. This resulted in [Velediaz] being forced to file a petition for a late claim the following month (May 2013)."

In addition, Melo stated Cervantes "refused to sign the proposed release, alleging that not only was the amount proposed too little, but also he could not receive money while [Velediaz] was not receiving any money at the same time. Accordingly, any allegations regarding [Cervantes'] 'settlement' are not accurate."

A copy of the court's order denying the motion is not included in our record. On our own motion, we augmented the record to include a copy of the minute order. The caption of the order indicates there were two matters pending before the court and that Vicki Roberts was specially appearing for Mirabel. However, the body of the order contains the following limited ruling: "Plaintiffs [Code of Civil Procedure section] 473 Motion for Relief for Late Claim [¶] Ruling: As more fully discussed on the record, denied. [Code of Civil Procedure section] 473 pertains to judicial proceedings; see also [section] 911.2[.]" The court cited the following two cases: *DiCampli-Mintz v. County*

7

*of Santa Clara* (2012) 55 Cal.4th 983 (*DiCampli-Mintz*), and *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783 (*Nelson*). There is no written ruling on the separately filed 946.6 Petition.

This issue is not clarified by the reporter's transcript. Rather, the reporter's transcript supports the conclusion the court was under the impression there was only one matter to be decided, i.e., whether Velediaz was entitled to Code of Civil Procedure section 473 relief. The court began the hearing by asking counsel to report the amount of Cervantes' settlement. Roberts stated the case had not settled, and the court replied, "[W]ell, it's in the pleadings." Roberts stated the reply brief explained the case was not settled because Cervantes had not signed the release. The city attorney confirmed she anticipated the case would settle for $5,000, but it was not final because Cervantes had not yet signed the release.

The court turned its attention to a different issue, stating, "[The] 'et al.' reference on the Cervantes tort claim meant that the [C]ity didn't make any response or settlement offer respecting [Velediaz]. Now, let me stop right here and say I'm fully prepared to believe that the failure to make a separate claim for [Velediaz] was a good-faith mistake, and that the [C]ity's failure to recognize that mistake was also in good faith. [¶] Anyhow, when [Mirabel] realized what had happened, she filed a late government tort claims application in May of this year . . . and the [C]ity rejected it. [¶] Then six weeks later . . . *both* plaintiffs just sued the [C]ity and [Aguilar]. Neither defendant has yet answered as far as I can tell. [¶] Has there been an answer?" The city attorney replied the defendants had not been served. The court laughed and asked the city attorney if she knew she had been sued and told her to "look into it."

The court next stated, "All right. Now, we have this motion . . . to give relief from the late claim made by [Velediaz]. [¶] I'm going to deny that motion. . . . [¶] But here's my reasoning . . . [Velediaz's] motion is premised on [Code of Civil Procedure] section 473, which I see a lot."

Robert's interjected, "Well, your [h]onor, there's also a companion petition under the Government Code that was contemporaneous—[.]" The court interrupted, stating, "Counsel, let me finish my evaluation, okay? Thank you. [¶] Going back to this [Code of Civil Procedure] section 473—which is explicitly mentioned in this motion— that statute pertains [to judicial proceedings]." After discussing Code of Civil Procedure section 473, the court noted "it doesn't make reference to anything other than court proceedings, where a court might take a lawyer off the hook. [¶] In the meantime, the predicate tort claims procedure itself is a condition precedent, which is set forth in . . . section 911.2. The procedural requirements of that statute are quite rigid and they do not include constructive notice. [¶] As recently as last year our Supreme Court was quite outspoken on those preliminary requirements." The court cited *DiCampli-Mintz* and *Nelson* to support its ruling "denying this motion."

Next, the court asked, "Now, Ms. Roberts, tell me all about your petition." Roberts explained the 946.6 Petition was "contemporaneously filed" with the 473 Motion. The court then stated, "It's rejected. I think it was probably pretty implicit to you that I rejected that." Roberts sought to clarify that the 946.6 Petition was different from the 473 Motion and it must be "liberally construed" and the court must determine if the City suffered any prejudice. She argued there was no evidence of prejudice because the City was on notice of Velediaz's name and address from the submitted medical records and police reports.

The court stated, "Constructive notice doesn't count. That's the jurisprudence. [¶] And by the way, the Supreme Court just doesn't want to hear about this. And under the *DiCampli-Mintz* case, it just doesn't work for you."

Roberts repeated her argument was based on evidence of actual notice, not constructive notice, and she asked the court if it was denying the 946.6 Petition exclusively on the issue of notice.

9

The court stated, "No; it's made upon the entire point that I made—which you tried to interrupt—which is on the record, and on all of the factors that I set forth, which took me quite a while to set them up. I don't want to repeat them now; they're on the record."

When counsel again endeavored to argue the merits of the 946.6 Petition, the court interrupted, "Don't repeat yourself. I heard that." Roberts tried one final time to discuss evidence the City had actual notice and were not prejudiced, and the court stated she was wrong. It admonished, "I really don't want to argue any further about it. My order is what I just said." When asked, Roberts indicated she had nothing more to say.

II

Under the Tort Claims Act (§ 905, et seq., TCA), an individual claiming personal injury must file a claim with the relevant governmental entity within six months. (§ 911.2.) Velediaz missed that deadline, and she filed an application for leave to present a late claim, which was denied. She then filed with the trial court a 473 Motion seeking relief and a 946.6 Petition for Relief from the TCA filing requirements arguing excusable neglect or inadvertence. The court determined the provisions of Code of Civil Procedure section 473 could not be used to remedy the situation. It does not appear from our record on appeal that the court considered the 946.6 Petition on the merits, or exercised its discretion with respect to the relief available under the TCA, and for this reason we must reverse.

*A. Ruling on the 473 Motion*

Code of Civil Procedure section 473, subdivision (b), provides for both discretionary and mandatory relief. One section states, "*The court may*, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (Code Civ. Proc., § 473, subd. (b), italics

10

added.)  Relief under this provision is discretionary.  (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 254.)

A different section of the statute provides, "Notwithstanding any other requirements of this section, *the court shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect."  (Code Civ. Proc., § 473, subd. (b), italics added.)  Relief under this provision is mandatory if the stated requirements are met.  (*Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487 [attorney mistake, inadvertence, surprise, or neglect need not be reasonable to justify mandatory relief].)  "The purpose of the mandatory relief provision is to relieve the client of the burden caused by the attorney's error, impose a burden on the attorney instead, and avoid additional malpractice litigation.  [Citation.]"  (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 63.)

In Velediaz's 473 Motion, she argued she was entitled to the type of *mandatory* relief provided by the statute because her attorney filed a declaration asserting there had been an inadvertent mistake.  However, it is well settled the mandatory relief provision does not apply to dismissals caused by failure to comply with the applicable statute of limitation, including suit on government tort claims.  (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 1:770, p. 1-169 (hereafter *Weil & Brown*).)

As explained by a different panel of this appellate court in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64 (*Tackett*), the part of Code of Civil

11

Procedure section 473, subdivision (b), that *mandates* relief from a default, default judgment, or dismissal when an attorney files a declaration admitting neglect does not apply to a section 946.6 petition. However, the showing of excusable neglect or inadvertence required under the government tort claim relief provisions "is the same as required for *discretionary relief* from default" under Code of Civil Procedure section 473, subdivision (b). (*Weil & Brown, supra,* 1:769, p. 1-168.1, italics added.)

The *Tackett* court explained, "[S]ection 946.6, subdivision (c)(1), provides that a court 'shall relieve the petitioner' from the claim presentation requirement if '[t]he failure to present the claim was through mistake, inadvertence, surprise, or *excusable* neglect unless the public entity establishes that it would be prejudiced [if the petition were granted].' (Italics added.)" (*Tackett, supra,* 22 Cal.App.4th at p. 64.) "Before 1989, the Supreme Court consistently held, 'To receive relief under this provision, petitioner must make the same showing as is required for relief from default under [Code of Civil Procedure] section 473.' [Citation.] But until that year, the standards for relief in . . . section 946.6 and Code of Civil Procedure section 473 were identical in all cases: Both required a showing of 'mistake, inadvertence, surprise, or excusable neglect.' A significant distinction between the two statutes was that the requisite showing mandated relief under . . . section 946.6, but gave the court discretion to deny it under Code of Civil Procedure section 473." (*Tackett, supra,* 22 Cal.App.4th at p. 64.)

"Effective 1989, the Legislature made two changes to [section 473]. It first eliminated a trial court's discretion to deny a motion for relief from a default judgment, provided 'an application for relief is timely, in proper form, and accompanied by an attorney's sworn declaration attesting to his or her mistake, inadvertence, surprise or neglect . . . .' Second, where an attorney attested to his or her neglect, relief from a default judgment was guaranteed without establishing that the neglect was excusable. [¶] The amendments were not written to cover every situation where Code of Civil Procedure section 473 relief was sought, however; they applied only to default

12

judgments. [Citation.] . . . Now, a mea culpa declaration by an attorney establishing that a default, default judgment, or dismissal was entered against his or her client as the result of attorney neglect deprives the trial court of discretion to deny relief, even without a showing that the neglect was excusable. [¶] But when an aggrieved party is not challenging a default, default judgment, or dismissal, Code of Civil Procedure section 473 still requires that an attorney's neglect be excusable before relief can be granted under that provision. That standard *is expressly retained in . . .* [*section* 946.6]." (*Tackett, supra,* 22 Cal.App.4th at pp. 64-65, italics added.)

Based on the above, we conclude the trial court correctly denied Velediaz's 473 Motion, but for an incorrect reason. The motion could be denied on the grounds Velediaz was not entitled to the mandatory relief provided for in Code of Civil Procedure section 473, subdivision (b). However, we found no legal basis to support the trial court's theory it need not decide the motion because Code of Civil Procedure section 473 only applies to judicial proceedings. As discussed in *Tackett,* the Code of Civil Procedure section 473 discretionary standard is retained in section 946.6. (*Tackett, supra,* 22 Cal.App.4th at p. 65.)

More importantly, the court had authority to consider Velediaz's petition brought under section 945.5. As we explain next, the record shows the trial court did not exercise its discretion and consider the merits of the 945.5 Petition.

B. *The 945.5 Petition*

Section 946.6, subdivision (a), provides, "If an application for leave to present a claim is denied or deemed to be denied pursuant to [s]ection 911.6, a petition may be made to the court for an order relieving the petitioner from [s]ection 945.4. The proper court for filing the petition is a superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates." Subdivision (b) of section 946.6 explains the petition "shall show each of the following:" (1) the late application was denied; (2) the reason for the late claim; and (3) the information required

13

by section 910 [claimant's name, address, injury etc.]. The petition must be filed within six months after the application to the board is denied.

Section 946.6, subdivision (c), provides, "The court shall relieve the petitioner from the requirements of [s]ection 945.4 if the court finds that the application . . . was made within a reasonable time . . . and was denied or deemed denied pursuant to Section 911.6 and that one or more of the following is applicable:  [¶]  (1) The failure to present the claim was through *mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced* in the defense of the claim if the court relieves the petitioner from the requirements of [s]ection 945.4.  [¶]  (2) The person who sustained the alleged injury, damage or loss was a minor . . . .  [¶]  (3) The person who sustained the alleged injury, damage or loss was physically or mentally incapacitated . . . and by reason of that disability failed to present a claim during that time.  [¶]  (4) The person who sustained the alleged injury, damage or loss died . . . ." (Italics added.)

"'The determination of the trial court in granting or denying a [P]etition for [R]elief under . . . section 946.6 will not be disturbed on appeal except for an abuse of discretion.  Abuse of discretion is shown where uncontradicted evidence or affidavits of the plaintiff establish adequate cause for relief.' [Citation.]  '. . . [S]ection 946.6 is a remedial statute intended to provide relief from technical rules which otherwise provide a trap for the unwary.  The remedial policy underlying the statute is that wherever possible cases should be heard on their merits.  Thus, a *denial* of such relief by the trial court is examined more rigorously than where relief is granted and any doubts which may exist should be resolved in favor of the application.' [Citation.]  Nonetheless, we 'cannot arbitrarily substitute our judgment for that of the trial court.' [Citation.]  [¶]  'It is the well-recognized policy of the law to liberally construe remedial statutes designed to protect persons within their purview, and the modern trend of judicial decisions favors granting relief unless absolutely forbidden by statute.' [Citation.]  '[S]ubstantial

14

compliance is all that is required. The old doctrine of strict and literal compliance, with its attendant harsh and unfair results, has disappeared from California law.' [Citation.] [¶] While we review the trial court's ruling for abuse of discretion, *that discretion must be exercised in conformity with the spirit of the law*. The policy favoring trial on the merits cannot be applied indiscriminately to render statutory time limits ineffective. [Citation.]" (*Barragan v. County of Los Angeles* (2010) 184 Cal.App.4th 1373, 1382, second italics added.)

Velediaz's basis for discretionary relief under the TCA was that her attorney failed to timely present the claim through mistake, inadvertence, and excusable neglect. She also presented evidence the City was not prejudiced because they were aware of the mistake, had all the information relating to her injuries, and it had not finalized a settlement with Cervantes. The City based its claim of prejudice merely on the administrative inconvenience of handling separate claims, apparently preferring tactically to deal with joint claims. Although the trial court commented the late filing was based on a "good faith mistake," the minute order and reporter's transcript indicate the court did not exercise its discretion to consider the requirements for relief under section 946.6, i.e., was there an excusable mistake and lack of prejudice.

The minute order mentions only the court's ruling on the 473 Motion. Perhaps the court mistakenly believed both motions were based on a request for mandatory relief under Code of Civil Procedure section 437. In any event, "A trial court's failure to exercise discretion is itself an abuse of discretion, and we review such action in accordance with that standard of review. [Citations.]" (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515.) Where the trial court has failed to exercise its discretion, the court's order "cannot stand. [Citation.]" (*Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1099.)

15

III

The order is reversed and the matter remanded for the trial court to exercise its discretion and consider the merits of the section 946.6 Petition for Relief. Appellant shall recover her costs on appeal.


O'LEARY, P. J.

WE CONCUR:


MOORE, J.


ARONSON, J.