Filed 8/24/20  Hudack v. Siggard CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| LARRY HUDACK, | |
| Plaintiff and Appellant, | E072714 |
| v. | (Super.Ct.No. RIC1724414) |
| WAYNE SIGGARD et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Randall S. Stamen, Judge.
Affirmed.

Larry J. Hudack, in pro. per., for Plaintiff and Appellant.

Craig N. Rossell for Defendants and Respondents.

This court has previously addressed the facts related to this matter.  (*Siggard v. Hudack* (March 2, 2018, E063054) [nonpub. opn.]; *Hudack v. Siggard* (October 17, 2013, E052779 & E053129) [nonpub. opn].)  We have also issued an opinion in this same case but pertaining to different defendants—the La Cresta Homeowners Association and the County of Riverside.  (*Hudack v. La Cresta Property Owners*

1

*Association et al.* (July 2, 2019, E070144) [nonpub. opn.] (2019 Cal.App. Unpub. LEXIS 4511, *10).)

In 2010, defendant and respondent Wayne Siggard (Siggard) prevailed on a cross-complaint against plaintiff and appellant Larry J. Hudack (Hudack).  A judgment of $604,700 with interest of 10 percent per year was entered in Siggard's favor.  Defendant and respondent Craig Rossell (Rossell) was Siggard's attorney in the 2010 lawsuit.

In January 2018, Hudack sued Siggard, Rossell, and others.  In the 2018 lawsuit, Hudack sought (1) to set aside the 2010 judgments; and (2) to have Siggard and Rossell (collectively, defendants) return $830,353 that Hudack paid to Rossell in February 2014.  In March 2018, the trial court clerk entered defendants' default.  Defendants sought relief from the default and filed an anti-SLAPP motion (Code Civ. Proc., § 425.16).[1]  The trial court granted defendants relief from the default and granted the anti-SLAPP motion.

Hudack contends the trial court erred by granting defendants relief from default and by granting defendants' anti-SLAPP motion.  We affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

A.    COMPLAINT AND FIRST AMENDED COMPLAINT

Hudack filed his original complaint in this case on December 28, 2017.  Siggard was personally served with the complaint on January 7, 2018.  On January 16, 2018, a

---

[1]  All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

2

Notice and Acknowledgement of Receipt of Hudack's complaint and summons was filed as to Rossell with a receipt date of January 16.

On January 31, Hudack filed a First Amended Complaint (FAC). In the FAC, Hudack asserted the 2010 judgments should be set aside because (1) the trial judge had a conflict of interest because the County of Riverside was a defendant in the case and (a) the trial judge had worked for a law firm that represented the County of Riverside, and (b) the trial judge's daughter-in-law was a partner in that same law firm; (2) the verdict form referred to "the Hudacks" but it was never established if "the Hudacks" referred to Hudack and his wife so the trial court lacked jurisdiction over "the Hudacks"; (3) the trial court lacked subject matter jurisdiction because, at trial, Siggard relied upon a cause of action that had been previously stricken; and (4) the trial court entered a judgment in favor of Siggard on a fraud cause of action, but Siggard did not plead a fraud cause of action. Hudack requested that defendants be ordered to return to Hudack "$830,353 plus interest in the amount of $2,274.94 per day from February 14, 2014, until the total amount is paid." A proof of service reflects the FAC was mailed to defendants, to addresses within California, on January 31.

B.    RESERVATION AND DEFAULT

On March 1, defendants reserved a hearing date of May 1 for their anti-SLAPP motion and paid their first appearance fee. On March 13, Hudack requested entry of defendants' default on the complaint filed on "December 28." The trial court clerk entered the default that same day.

3

## C. ANTI-SLAPP MOTION

On March 16, defendants filed their anti-SLAPP motion. In the motion, defendants asserted Hudack's lawsuit was based upon defendants' petitioning activity because Hudack's lawsuit "is comprised entirely of allegations stemming from the trial of the underlying action."

Defendants asserted Hudack could not demonstrate a probability of prevailing on the merits of his lawsuit. Defendants relied upon (1) the litigation privilege, and (2) the doctrine of collateral estoppel. In regard to the litigation privilege, defendants wrote, "[A]ll of the allegations in the FAC aimed at Siggard and Rossell arose in a civil action where Siggard was a defendant and cross-complainant and Rossell represented him. Assuming for sake of argument that those allegations are true, each went to achieve the objects of the underlying action and was related to it. Thus, because the litigation privilege bars derivative actions and applies to all tort claims save malicious prosecution, [citation], each of the allegations aimed at moving parties in the FAC cannot be proven in this case because the evidence supporting them is absolutely barred by the litigation privilege."

In regard to collateral estoppel, defendants asserted, "Each of the allegations in the FAC that relate to [defendants] concerns perceived irregularities during the trial of the underlying action. They are all trial issues." Defendants explained that the 2010 judgment was appealed "to the United States Supreme Court, where the jury's verdicts and the trial court's post-trial rulings were left intact." Defendants asserted that

4

Hudack's current lawsuit "constitutes an impermissible second bite at the same apple and is thus barred by the doctrine of collateral estoppel."

### D. EX PARTE APPLICATION

On March 24, Hudack requested to vacate the May 1 hearing on the anti-SLAPP motion because defendants were in default. On May 1, the trial court held a hearing in the matter. Rossell explained that defendants paid their appearance fees on March 1 and reserved a hearing date, but did not file their motion immediately thereafter because the hearing was scheduled for May 1. When defendants became aware of the default, they immediately filed their anti-SLAPP motion. Rossell asserted the trial court clerk should not have entered the default "in light of the fact that [defendants] paid [their] first appearance fee." Rossell contended, "We were of record at that moment. We were submitting to the Court's jurisdiction at that time, and the only issue was how soon our moving papers would be due in light of the May 1st hearing."

Hudack responded that defendants "had plenty of time to file papers." The trial court said it could not hear the anti-SLAPP motion due to the default, but that it believed the entry of default was a mistake. The trial court suggested that the best way for the court to address the matter would be via a motion or an ex parte application to vacate the default. The trial court went on to explain that, if a defendant has not appeared in a case and a plaintiff files an amended complaint, then the amended complaint "must also be personally served on a defendant before his or default . . . can be taken." The trial court continued the hearing to May 31.

5

On May 8, defendants filed an ex parte application for relief from default. (§ 473, subd. (b).) In a declaration, Rossell declared, "On February 1, 2018 I received by mail a first amended complaint filed by Mr. Hudack in this case. That pleading was never personally served. At that time, with the consent of Mr. Siggard and as a courtesy to Mr. Hudack, I signed and sent Mr. Hudack a Notice of Acknowledgement of Receipt on behalf of Mr. Siggard so Mr. Hudack would not have to have Mr. Siggard personally served with either the original or first amended complaint."

Rossell further declared that, when he did not receive a timely opposition to the anti-SLAPP motion, he e-mailed Hudack on April 23. On April 24, Hudack responded by e-mailing Rossell the entry of default from March 13.[2] Rossell declared, "The clerk's signature on his Request for Entry of Default came as a surprise. I didn't know the request had been processed. I had never been served with it previously."

Defendants contended the default should be set aside because defendants "were already of record in this case" in that they had paid their first appearance fees and reserved a hearing date on the anti-SLAPP motion. Alternatively, defendants contended the default should be set aside due to surprise and excusable neglect on the part of Rossell because Rossell believed defendants were parties of record by virtue of paying appearance fees and reserving a hearing date, so he was surprised by the entry of default.

---

[2] In his declaration, Rossell referred to a default entered on March 16. We infer this is an error and he intended to write March 13.

E.     <u>OPPOSITION TO EX PARTE APPLICATION AND ANTI-SLAPP</u>

       <u>MOTION</u>

Hudack opposed defendants' ex parte application for relief from default. Hudack asserted that defendants were served by mail with the FAC but failed to file a responsive pleading. Hudack contended that defendants' "ignorance of the law" in believing that payment of a first appearance fee constituted a responsive pleading "is not excusable." Hudack asserted, "Defendants' conduct was not that of reasonably prudent persons."

Hudack also opposed defendants' anti-SLAPP motion. Hudack asserted, "Never in the history of California jurisprudence has any court held that an anti-SLAPP motion, demurrer, or motion to strike can defeat an independent action in equity that attacks a void judgment. [¶] If an anti-SLAPP motion or claims of litigation privilege could defeat an action in equity challenging void judgments, there could never be a successful challenge to void judgments." (All caps. omitted.) In regard to collateral estoppel, Hudack asserted, "Whether the judgments in the underlying case were arguably meritorious and whether those judgments were affirmed on appeal is completely irrelevant. [¶] A challenge to void judgments is not a challenge to the judgments' merits but a challenge to the underlying jurisdiction that produced those judgments. An order rendered without jurisdiction is null and void." (Boldface omitted.)

F.    HEARING ON EX PARTE APPLICATION

On May 8, the trial court held a hearing on defendants' ex parte application for relief from default.  At the beginning of the hearing, the trial court noted that Rossell declared he had not been served with the entry of default and the trial court "noted that the addresses are slightly different with regard to Mr. Rossell's address and the address indicated on the request for entry of default."

Hudack responded that he has been involved in litigation with Rossell for 12 years and has always sent correspondence to the same office address for Rossell.  Rossell said he did not receive the entry of default.  Rossell explained that his office is located at "228 West Bonita" and the entry of default was mailed to "228 Bonita."

Hudack noted that Rossell asserted he filed the anti-SLAPP motion on March 16 after receiving notice that the default had been entered on March 13.  Hudack contended that Rossell's assertion belied any claim that Rossell did not have notice of the entry of default.  Further, Hudack contended that defendants received the FAC so they were required to file a responsive document within a certain time period.  Hudack contended that paying a first appearance fee is not an appearance.

Rossell asserted that the default document that he received was Hudack's first request for entry of default that had been rejected by the trial court clerk as being too early.  Rossell did not believe he received the clerk's entry of default, which resulted from Hudack's second request for entry of default.  Rossell argued Hudack would suffer no prejudice by granting defendants relief from default.

8

The trial court asked whether Hudack served Rossell electronically with documents in the case. Hudack asserted that Rossell "agreed to waive personal service. There was no requirement for personal service in this case." Hudack argued, "Any event, if there was—if there was a defect of any kind in the service, it's been waived. On May 1st, Mr. Rossell made a general appearance in front of this Court, and he argued his case at that time. By law, a general appearance waives any defects in the service or summons. And there was no requirement in this case for an amended summons. There was no change from the amended, the complaint—in the amended complaint from the parties or in the substance of the claims."

The trial court took the matter under submission. On June 29, the trial court denied defendants' ex parte application due to defendants failing to show exigent circumstances. The trial court set the matter as a motion for relief from default to be heard on August 17.

G.     MOTION FOR RELIEF FROM DEFAULT

Defendants filed a motion for relief from default. (§ 473, subd. (b).) Defendants argued the default should be set aside due to mistake because "Rossell believed that paying first appearance fees electronically and reserving a date on the court's docket . . . made he and [Siggard] immune from default." Alternatively, defendants asserted the trial court clerk erred by entering the default because defendants had paid their appearance fees and reserved a hearing date. Defendants contended that setting aside the default would not prejudice Hudack because Hudack would have "every opportunity to fully oppose [defendants'] efforts to have their default set aside."

9

In a declaration attached to the motion, Rossell declared, "On January 12, 2018 I signed and sent Mr. Hudack a Notice of Acknowledgement of Receipt on behalf of Mr. Siggard and myself so Mr. Hudack would not have to have us personally served with either [*sic*] the original complaint." Rossell further declared, "On January 31, 2018 Mr. Hudack filed and mail served his first amended complaint on Mr. Siggard and me." Rossell explained that he calendared March 1 as the date by which defendants should make an appearance in the case because the deadline for appearing was March 7. Rossell declared that, on March 1, defendants paid their first appearance fee and reserved a hearing date, which Rossell believed made them "default-proof." Rossell declared, "If I was mistaken in any of this, it was only because I'm still relatively unfamiliar with the court reservation system. Perhaps the assumptions I made were incorrect but they made sense to me then as well as now."

## H. OPPOSITION TO MOTION FOR RELIEF FROM DEFAULT

Hudack opposed defendants' motion for relief from default. Hudack contended defendants knew they needed to appear in the case by March 7. Hudack explained that section "585 defines what constitutes a responsive pleading." Hudack asserted, "Only a timely filing pursuant to [section] 585 would have permitted Defendants to avoid default. Defendants failed to read or understand [section] 585 and that is not excusable."

Hudack asserted, "Defendant's claim that paying a first appearance fee made them 'default proof' [citation] That demonstrates ignorance of the law, which is not

10

excusable. [¶] Defendants' conduct was not that of reasonably prudent persons." Hudack wrote, "Failure to know the law, and acting contrary to law, is not excusable."

In an amended sur reply, Hudack argued that defendants' motion should be denied because defendants failed to attach, to the motion for relief, a copy of their proposed pleading as required by section 473, subdivision (b).

I.      RULING

On November 20, the trial court held a hearing on defendants' motion for relief from default. Prior to the hearing, the trial court issued a tentative ruling granting the motion. In the tentative ruling, the trial court wrote, "There are sufficient grounds for discretionary relief under . . . section 473, subdivision (b) as to both Defendant Siggard and Defendant Rossell. The Court takes into account the preference for a trial on the merits. There are sufficient facts to support mandatory relief for Defendant Siggard, a client, under the mandatory provision of section 473, subdivision (b). [¶] Defendant Siggard's and Defendant Rossell's motion to strike, filed under section 425.16, substantially complies with the requirement under section 473(b) that a copy of the proposed answer or other pleading accompany the application for relief."

Neither party requested oral argument, and neither party appeared at the November 20 hearing. The trial court made its tentative ruling its final ruling.

J.      RENEWED ANTI-SLAPP MOTION

On February 15, 2019, defendants filed a Renewed Anti-SLAPP Motion. Defendants argued that Hudack's lawsuit pertained to their petitioning activity "[b]ecause the allegations in Hudack's FAC . . . relate entirely to the trial of the

11

underlying action." Defendants asserted Hudack was unlikely to prevail on the merits of his lawsuit because (1) his claims were barred by collateral estoppel; (2) his evidence would be barred by the litigation privilege; and (3) a collateral attack has to be based on a lack of personal or subject matter jurisdiction, and Hudack failed to allege that either was lacking.

### K.      OPPOSITION TO RENEWED ANTI-SLAPP MOTION

Hudack opposed the renewed anti-SLAPP motion. Hudack asserted the anti-SLAPP motion was untimely because such a motion has to be filed within 60 days of service of the complaint and defendants were served with the FAC on January 12, 2018. Further, Hudack contended, "Never in the history of California jurisprudence has any court, other than this current court, held that an anti-SLAPP motion, demurrer, or motion to strike can defeat an independent action in equity that attacks a void judgment."

Hudack asserted he was likely to prevail on the merits of his lawsuit because "[a]s an indisputable matter of law, the award of legal fees in the Underlying Action is void and the judgments from the Underlying Action are a nullity that cannot be enforced." (All caps. & boldface omitted.) Hudack contended the litigation privilege did not apply to suits brought in equity.

### L.      HEARING AND RULING

The trial court issued a tentative ruling granting defendants' anti-SLAPP motion. In the tentative ruling, the trial court found Hudack's FAC concerned defendants' petitioning activity because the allegations "concern[] underlying litigation . . . .  Mr.

12

Siggard was a defendant in the action.  Mr. Rossell, is the attorney, who represented Mr. Siggard in the action."

The trial court concluded that Hudack failed to demonstrate a likelihood of prevailing on the merits of the lawsuit.  The trial court wrote, "[Hudack] failed to present admissible evidence that he has a reasonable probability of prevailing on his contention that the judgment in Hudack v. Siggard, et al., is void, despite the finality of the judgment in the action, after an appeal.  [¶]  Additionally, the claims raised by [Hudack] against defendants Wayne Siggard and Craig Rossell in the first amended complaint are also subject to the litigation privilege."

The trial court held a hearing on the anti-SLAPP motion.  At the hearing, Hudack argued, "Your Honor, you declared that I had provided no evidence that I could possibly prevail in this case.  Your Honor, the case before the Court now is an independent action in equity.  It's not a derivative tort action.  It's a collateral attack on void judgments."  Hudack continued, "Your Honor, in the underlying case, the judgments are void as a matter of law because the judgments are void."  The trial court granted defendants' anti-SLAPP motion, adopting the tentative ruling as its final ruling.

## DISCUSSION

A.    RELIEF FROM DEFAULT

1.    *CONTENTION*

Some of Hudack's appellate arguments, related to the default issue, focus on alleged errors in defendants' motion.  For example, Hudack contends that defendants "stated no grounds for relief" in their motion.  In support of that contention, Hudack

13

cites defendants' motion for relief. We review the trial court's ruling for error; we do not review the parties' trial court arguments for error. (*People v. Mason* (1991) 52 Cal.3d 909, 944 ["It is axiomatic that we review the trial court's ruling"]; *Cal-State Business Products & Services, Inc v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676 ["It is axiomatic we review judicial action"].) Accordingly, we do not address the merits of Hudack's criticisms of defendants' trial court arguments.

Instead, we focus on Hudack's assertion that the trial court erred. Hudack contends the trial court erred by granting defendants' motion for relief because Rossell's "ignorance of the law . . . is not excusable." We conclude the trial court erred by granting relief to Rossell, but because there is no showing of prejudice, we do not reverse. We conclude the trial court did not err by granting relief to Siggard.

### 2. *LAW AND STANDARD OF REVIEW*

We apply the abuse of discretion standard when reviewing an order granting relief. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)[3] Section 473, subdivision (b) (hereafter, section 473(b)), provides, in relevant part, "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." Thus, the trial court has

---

[3] At oral argument in this court, Hudack contended the de novo standard of review applies. The de novo standard of review applies to the anti-SLAPP portion of the opinion. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) The abuse of discretion standard of review applies to the relief from default portion of the opinion. (*Rappleyea v. Campbell*, *supra*, 8 Cal.4th at p. 981.)

14

discretion to grant a party relief from default if the party or the party's attorney made a mistake.

Section 473(b) also provides for mandatory relief. The mandatory relief provision reads, "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made . . . and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment." The mandatory relief provision does not apply to self-represented litigants. (*Esther B. v. City of Los Angeles* (2008) 158 Cal.App.4th 1093, 1100.)

> 3. *ANALYSIS CONCERNING ROSSELL*

Rossell was self-represented. Siggard was represented by Rossell. Thus, Rossell and Siggard are not similarly situated for purposes of the motion for relief because the mandatory relief provision was available to Siggard but not Rossell. (*Esther B. v. City of Los Angeles*, *supra*, 158 Cal.App.4th at p. 1100 [mandatory relief not available to self-represented litigants].) We begin our analysis with Rossell, who declared he may have made a mistake of law.

"An honest mistake of law is a valid ground for relief where a problem is complex and debatable. [Citation.] The issue of [whether a] mistake of law constitutes excusable neglect presents a question of fact. The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law." (*Brochtrup v. Intep* (1987) 190 Cal.App.3d 323, 329.)

15

The law pertaining to defaults provides, in relevant part:  "[I]f the defendant has been served, . . . and no answer, demurrer, notice of motion to strike . . . , notice of motion to transfer . . . , notice of motion to dismiss . . . , notice of motion to quash service of summons or to stay or dismiss the action . . . or notice of the filing of a petition for writ of mandate . . . has been filed with the clerk of the court within the time specified in the summons, . . . the clerk, upon written application of the plaintiff, shall enter the default of the defendant."  (§ 585, subd. (b).)

The law is clear that when a defendant's response to a complaint will be an anti-SLAPP motion, i.e., a special motion to strike (§ 425.16, subd. (b)(1)), in order to avoid a default, a defendant must file a notice of motion.  (§ 585, subd. (b); see also § 1014 [a defendant appears when he "files a notice of motion to strike"] .)  Rossell's belief—that paying an appearance fee and reserving a court date were sufficient to avoid default—was unreasonable given the black letter statutory law that (1) requires the filing of a notice of motion, and (2) does not mention paying an appearance fee or reserving a court date.  Given the clarity of the statutory law, this was not a complex and debatable legal problem.  (See *State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611 ["An honest mistake of law is a valid ground for relief when the legal problem posed ' "is complex and debatable" ' "].)

Further, in Rossell's declaration, in regard to his error, he declared, "Perhaps the assumptions I made were incorrect but they made sense to me then as well as now." Rossell declared that he relied upon his assumptions.  Rossell did not indicate that he read section 585, subdivision (b), or otherwise tried to learn the legal requirements for

16

avoiding default. Rossell failed to offer a reasonable justification for his lack of knowledge of the law. (See *Brochtrup v. Intep*, *supra*, 190 Cal.App.3d at p. 329 ["The determining factors are the reasonableness of the misconception and the justifiability of lack of determination of the correct law"].)

In sum, Rossell's claimed mistake of law was unreasonable and he provided no reasonable justification for his ignorance of the law. Because the mistake was unreasonable and the lack of knowledge was unjustified, Rossell's mistake was inexcusable. Because the mistake was inexcusable, the trial court erred by granting Rossell relief from his default.

On appeal, Rossell asserts, "[S]ection 585 . . . has no application here since it applies only where judgments are entered on defaults after a failure to answer a complaint." Section 585, subdivision (b), provides, "[I]f the defendant has been served, . . . and no answer, demurrer, notice of motion to strike . . . has been filed with the clerk of the court within the time specified in the summons . . . the clerk, upon written application of the plaintiff, shall enter the default of the defendant." Thus, the plain language of the statute provides direction regarding the entry of default by a court clerk. (*People v. Maultsby* (2012) 53 Cal.4th 296, 299 ["The statute's plain language controls"].) The statute is not merely focused on default judgments. Therefore, we are not persuaded by Rossell's contention.

17

Next, Rossell asserts the trial court could properly provide him relief from default because he was not personally served with the FAC. When a complaint is amended "as to a matter of substance and not a mere matter of form" and the defendant has not yet appeared in the matter, then the defendant must be served with the "amended complaint in the manner provided for service of summons." (*Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436, 440 & 443.) "An amendment which significantly increases the amount of damages sought is an amendment of substance which must be served before a default can be entered." (*Id.* at p. 440.)

Rossell asserts that, in a letter, Hudack "appeared to inform [defendants]" that he amended the original complaint by eliminating a cause of action. Defendants contend that the elimination of a cause of action would be a material amendment. Rossell does not explain (1) if a cause of action was eliminated in the FAC, (2) what cause of action was eliminated, (3) whether the cause of action involved Rossell or another party, or (4) why the elimination of the cause of action constituted a material amendment. Given the lack of analysis, we find Rossell's assertion to be unpersuasive. (See *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942-943 [provide meaningful analysis in appellate briefs].)

### 4. *ANALYSIS CONCERNING SIGGARD*

We now analyze the issue as it relates to Siggard. "[T]he mandatory relief provision entitles a party to relief even when his or her attorney's error is inexcusable." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 439; accord *SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511,

18

516-517.) Rossell was/is Siggard's attorney in this matter. Rossell filed a declaration explaining the default was entered due to his mistake of law. As a result, even though the mistake was inexcusable, the trial court was required to grant Siggard relief from the default. (§ 473, subd. (b).)

Hudack contends the trial court could not grant Siggard mandatory relief because defendants did not demonstrate diligence in seeking relief. The mandatory relief provision does not require a showing of diligence. (*Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487.) Accordingly, Hudack's argument concerning diligence is not persuasive.

Hudack contends the trial court could not grant Siggard mandatory relief because the motion for relief did not include an affidavit reflecting Rossell's mistake. (§ 473(b) ["the court shall, whenever an application for relief is . . . in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake"].) Rossell's declaration was attached to defendants' motion for relief from default, and a declaration is the equivalent of an affidavit (*Ancora-Citronelle Corp. v. Green* (1974) 41 Cal.App.3d 146, 148, fn. 1). In the declaration there is a subsection entitled, "DECLARATION RE ATTORNEY FAULT." In that subsection, Rossell declares, "Perhaps the assumptions I made were incorrect." Thus, Rossell's declaration is attached to the motion and it includes a section wherein Rossell admits he may have made a mistake.

19

Hudack contends the trial court could not grant Siggard mandatory relief because an answer was not attached to the motion for relief. Section 473(b) provides, "Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted." Defendants' anti-SLAPP motion had been filed with the trial court prior to the motion for relief being filed. Given that the anti-SLAPP motion had already been filed, we see little reason for defendants to file it a second time. Nevertheless, to the extent one could conclude the procedural rules were violated and therefore the trial court erred by granting relief to Siggard, we would not reverse because there has been no showing of prejudice.

### 5.    *HARMLESS ERROR*

We now turn to the issue of prejudice. We cannot reverse a judgment unless it is shown "that a different result would have been probable if such error . . . had not occurred or existed." (§ 475.) We cannot presume that an error is prejudicial. (§ 475.) It is the appellant's burden to establish the error was prejudicial to him. (*Lynch v. Birdwell* (1955) 44 Cal.2d 839, 846.)

The filing of an amended complaint causes the original complaint to "cease[ ] to have any effect as a pleading or as a *basis for a judgment.*" (*Tidwell v. Henricks* (1954) 124 Cal.App.2d 64, 66; accord *Sheehy v. Roman Catholic Archbishop of San Francisco* (1942) 49 Cal.App.2d 537, 541-542.)

Hudack filed his original complaint on December 28, 2017. Hudack filed his FAC on January 31, 2018. On March 13, 2018, Hudack requested entry of default on

20

the complaint filed on "December 28." The trial court clerk entered the default "as requested." Thus, the entry of default arguably pertains to the original complaint, not the FAC.[4]

In looking at the record, one could contend that the entry of default was essentially meaningless because it reflected defendants were in default on a non-operative pleading, which means a judgment could not have been entered based upon the default. (*Johns v. Mongan* (1961) 190 Cal.App.2d 94, 97 ["Here an amended complaint was filed within the time allowed by law and thereby the original complaint ceased to have any effect as a pleading upon which to base a default or judgment"].) In other words, one could assert that the default entered by the clerk was effectively a nullity. (*Heidary v. Yadollahi* (2002) 99 Cal.App.4th 857, 863-864; *Sheehy v. Roman Catholic Archbishop of San Francisco*, *supra*, 49 Cal.App.2d at p. 541.) One could then contend that the same result in the case would have occurred absent any error in

---

**4** On March 13, 2018, Hudack used Judicial Council of California Form CIV-100 to request entry of defendants' default. On that form, Hudack requested entry of default on the complaint filed on "December 28." At the bottom of the form, the clerk signed the document reflecting the "[d]efault [was] entered as requested." The register of actions for March 13, 2018, reflects that Hudack requested entry of defendants' default on the FAC—as opposed to the original December 28, 2017 complaint. The register of actions does not indicate whether the default was entered.

When the record contradicts itself, the part of the record that prevails is that "which, because of its origin and nature or otherwise, is entitled to greater credence." (*People v. Smith* (1983) 33 Cal.3d 596, 599.) In this case, the portion of the record that prevails is the form completed by Hudack and the clerk because it is the primary document, as opposed to the register of actions, which provides a partial description of the form. In sum, in examining the default, we rely upon the form completed by Hudack and the clerk; we do not rely upon the contradictory description of the form that is set forth in the register of actions.

21

granting relief because the effectively null entry of default would not impede the trial court from hearing and ruling upon the anti-SLAPP motion.

Hudack asserts, "The record demonstrates the proceedings and actions of the trial court were irregular and conducted in a manner openly and notoriously prejudicial to [Hudack]." Hudack does not explain how a different result would have been probable if the trial court's error had not occurred. Given that one could view the entry of default as a nullity, this court cannot reverse the judgment without an argument from Hudack that explains how a different result would have been probable absent the error. Because Hudack does not offer a reasoned argument on the issue of prejudice, we do not reverse the judgment. (§ 475.)

B.     ANTI-SLAPP MOTION

1.     *LACK OF OPPOSITION*

Hudack contends the trial court was required to rule in his favor on the anti-SLAPP motion because "[t]here is no evidence in the record that [defendants] controverted [Hudack's] contentions [that] the challenged judgments are void on their face based on jurisdictional defects."

We apply the de novo standard of review. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326 (*Flatley*).) The anti-SLAPP statute provides that a cause of action shall be stricken if the cause of action arises from any act in furtherance of a defendant's "right of petition or free speech . . . in connection with a public issue." (§425.16, subd. (b)(1).) However, the cause of action will not be stricken if "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on

the claim." (§ 425.16, subd. (b)(1).) Thus, the burden of proving a probability of prevailing rested upon Hudack, as the plaintiff. (§ 425.16, subd. (b)(1).)

In examining the plaintiff's probability of prevailing the trial court must "accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.) The trial court found that Hudack failed to meet his burden. Because Hudack failed to meet his burden, there was no need for the trial court to look at whether defendants' successfully rebutted Hudack's assertion regarding Hudack's probability of prevailing. Therefore, an alleged lack of opposition does not demonstrate that the trial court erred.

### 2.    PRECEDENT

Hudack contends, "Never in the history of published California jurisprudence has any court ruled an anti-SLAPP motion, a derivative tort defense, defeats [a] collateral attack on judgments void on their face."

We apply the de novo standard of review. (*Flatley*, *supra*, 39 Cal.4th at pp. 325-326.) In *Church of Scientology*, the Church brought a "complaint attack[ing] the judgment Wollersheim had obtained against the Church in a prior action." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 636 (*Church of Scientology*) (disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5).) Wollersheim brought an anti-SLAPP motion, and the trial court granted the motion. On appeal, the Church asserted the trial court erred because "its action against Wollersheim is not a SLAPP suit." (*Ibid.*)

23

Specifically, the church argued it was attacking the judgment, not Wollersheim, and therefore the Church's claims did "not 'arise' from any act in furtherance of Wollersheim's right of petition or free speech." (*Church of Scientology*, *supra*, 42 Cal.App.4th at p. 648.) The appellate court concluded "[t]he Church's approach to the interpretation of section 425.16 is too restrictive." (*Ibid.*) The appellate court explained that the anti-SLAPP statute applies "to any direct attack on the judgment in the prior action, which resulted from Wollersheim's petition activity." (*Ibid.*, italics omitted.) Thus, *Church of Scientology* reflects an anti-SLAPP motion may be brought in response to an attack on a judgment.

Hudack asserts that *Church of Scientology* applies to a direct attack on a judgment—not to a collateral attack. "Either a 'direct attack' or a 'collateral attack' are the procedural mechanisms available to challenge a judgment that is allegedly void. A direct attack means an attack on the judgment in the action in which it was rendered, or a proceeding instituted for the specific purpose of attacking the judgment. [Citation.] In contrast, a collateral attack is any procedural challenge that does not constitute a direct attack." (*OC Interior Services, LLC v. Nationstar Mortgage, LLC* (2017) 7 Cal.App.5th 1318, 1326-1327.) "A judgment that is void on the face of the record is subject to either direct or collateral attack at any time." (*Id.* at p. 1327.)

Hudack does not provide any analysis explaining why the reasoning and holding of *Church of Scientology* cannot be applied to a collateral attack. At oral argument in this court, Hudack asserted it was not his responsibility to explain the difference between a direct and collateral attack because that difference is set forth in the law. We

24

are not faulting Hudack for failing to explain the difference between a direct attack and a collateral attack. Rather, we are unpersuaded by Hudack's argument because he fails to explain why the difference matters in the procedural context of an anti-SLAPP motion. Hudack needed to provide such an explanation so as to distinguish *Church of Scientology*. Because Hudack did not offer such an explanation, we are not persuaded that *Church of Scientology* is distinguishable on the basis that it only applies to a direct attack.

Next, Hudacks seeks to distinguish *Church of Scientology* on the element of petitioning activity. Hudack contends, "In *Church* [*of Scientology*], the prior action involved petitioning activity. The Underlying Case did not involve 'petition activity,' it involved breach of fiduciary duty, violation of CEQA, trespass, encroachment and private nuisance."

The anti-SLAPP statute provides, "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a . . . judicial proceeding." (§ 425.16, subd. (e).) The 2010 causes of action listed by Hudack were part of a judicial proceeding. Because Hudack's current lawsuit is based upon a party's and a lawyer's actions taken in the 2010 judicial proceeding, his current lawsuit is based upon "petitioning activity." Thus, both the instant case and *Church of Scientology* concern petitioning activity.

25

At oral argument in this court, Hudack asserted we should apply the law of the case doctrine when examining whether the instant case involves petitioning activity.[5] Hudack asserted that, in an opinion filed in 2019, this court concluded his allegations did not concern petitioning activity, and therefore we are bound by that conclusion under the law of the case doctrine.

The law of the case doctrine provides, " '[T]he decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case.' " (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 301-302.)

The opinion filed last year was *Hudack v. La Cresta Property Owners Association et al.* (July 2, 2019, E070144) [nonpublished opinion] (2019 Cal. App. Unpub. LEXIS 4511). The 2019 appeal shares the same trial court case number as the instant case but concerned anti-SLAPP motions filed by the County of Riverside and the La Cresta Property Owners Association. (*Id.* at p. *6.) In that case, we concluded (1) Hudack's allegations involving the County of Riverside pertained to petitioning activity; (2) Hudack's allegations involving the La Cresta Homeowners Association pertained to petitioning activity; and (3) Hudack's allegations pertaining to Judge Holmes and a lack of jurisdiction did not involve petitioning activity. (*Id.* at p. *10.)

---

[5] Although not raised in the briefing, we will address this issue.

In the instant case, we are examining the allegations involving Siggard and Rossell to determine if they pertain to Siggard's and Rossell's petitioning activity because Hudack is asserting *Church of Scientology* is distinguishable from the instant case on the element of petitioning activity. Siggard and Rossell were not parties to the 2019 appeal. In the 2019 appeal, we did not examine whether allegations pertaining to Siggard and Rossell involved petitioning activity. Hudack failed to explain how law of the case is applicable when (1) Siggard and Rossell were not parties to the 2019 appeal; and (2) we did not consider the allegations against Siggard and Rossell in the 2019 appeal. (See *Nally v. Grace Community Church*, *supra*, 47 Cal.3d at pp. 301-302 [" 'the same parties in any subsequent . . . appeal in the same case' "].) Hudack also failed to explain why our conclusion pertaining to the Judge Holmes allegations should be law of the case rather than the conclusions pertaining to the allegations related to the County and the Association. For the foregoing reasons, we find Hudack's reliance on the law of the case doctrine to be unpersuasive.

In conclusion, Hudack has not successfully distinguished *Church of Scientology* either in regard to (1) a direct attack versus a collateral attack, or (2) petitioning activity. As a result, we are not persuaded that there is a lack of precedent for the trial court's ruling.

### 3. *LACK OF AUTHORITY*

Hudack contends the trial court lacked "authority to consider and rule on an anti-SLAPP motion."

27

We apply the de novo standard of review. (*Flatley*, *supra*, 39 Cal.4th at pp. 325-326.) An anti-SLAPP motion is an option for responding to a collateral attack. (*Church of Scientology*, *supra*, 42 Cal.App.4th at p. 648.) Because the anti-SLAPP motion was procedurally proper, the trial court could rule upon it. (*People v. Superior Court for Los Angeles County* (1965) 239 Cal.App.2d 99, 102 ["The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it"].)

Hudack contends the trial court "acted without authority [because it] did not consider the judgment roll, and ruled based on extrinsic evidence submitted by [defendants] in their prohibited anti-SLAPP motion." In the trial court's ruling, it concluded, "[Hudack] failed to meet his burden on the second prong of the analysis. [Hudack] failed to present admissible evidence that he has a reasonable probability of prevailing on his contention that the judgment in Hudack v. Siggard, et al., is void, despite the finality of the judgment in the action, after an appeal."

The trial court found that Hudack did not meet his burden, which means the trial court was relying upon Hudack's evidence. (See § 425.16, subd. (b)(1) [plaintiff bears the burden on the second prong].) Therefore, if the trial court "ruled based on extrinsic evidence," as alleged by Hudack, it would have necessarily been extrinsic evidence submitted by Hudack. Hudack does not provide a record citation to support his assertion that the trial court "ruled based on extrinsic evidence." (Cal. Rules of Court, rule 8.204(a)(1)(C) [record citations].) Accordingly, because (1) there is no record citation to support the assertion that the trial court relied upon extrinsic evidence, and

28

(2) if the trial court relied upon extrinsic evidence, then it would have necessarily been Hudack's evidence because he bore the burden of proof, we find Hudack's contention to be unpersuasive.

### 4. *FRIVOLOUS MOTION*

Hudack contends, "An Anti-SLAPP motion is patently frivolous. If the judgment roll contains evidence of [defendants'] protected conduct, such conduct will be recognized by the examining court as protected and that conduct cannot render the judgments void." Hudack reasons, "If the filing of a collateral attack on void judgments automatically meets the first prong requirements of an anti-SLAPP analysis, then the entire burden shifts to plaintiff virtually eliminating the statutory two prong analysis. That is not consistent with the legislative intent behind [section] 425.16."

We apply the de novo standard of review. (*Flatley*, *supra*, 39 Cal.4th at pp. 325-326.) " '[T]o survive anti-SLAPP scrutiny, a plaintiff need only establish their cause of action has "minimal merit." ' [Citations.] That is because the anti-SLAPP procedure is only intended to 'weed[] out, at an early stage, *meritless* claims arising from protected activity.' " (*Kinsella v. Kinsella* (2020) 45 Cal.App.5th 442, 460.)

This court has explained, "We also stress again that the purpose of section 425.16 is well served by requiring the plaintiff to make a positive showing. The statute clearly expresses a legislative suspicion of SLAPP suits and intent to weed out all but those having demonstrable merit. It is not unfair to insist that a party who chooses to bring what appears on its face to be a SLAPP suit be prepared to back up his claims with facts." (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 23, fn. 23.)

29

In the instant case, the trial court found that Hudack failed to demonstrate his lawsuit had minimal merit. On appeal, Hudack has not shown that the trial court erred in that finding. Accordingly, defendants' anti-SLAPP motion served the purpose of preventing a meritless lawsuit from proceeding. Thus, the motion was not frivolous.

C.     UNDERLYING CASE

Hudack contends, "This Court should rule the judgments in the underlying case are void." Hudack asserts that the 2010 judgments "are void on their face because of jurisdictional defects that arose from a court acting without authority."

When a notice of appeal specifies a particular judgment or order, the jurisdiction of the appellate court is limited to that specified judgment or order. (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46.)

In Hudack's notice of appeal, he included (1) the trial court's April 2, 2019, judgment dismissing his case; (2) the ruling on defendants' anti-SLAPP motion; and (3) the trial court's November 18, 2018 order setting aside defendants' default. The April 2, 2019, judgment, which is attached to the notice of appeal, reflects it pertains to Riverside County Superior Court case No. RIC1724414. The register of actions reflects that case No. RIC1724414 was initiated on December 28, 2017.

In the case before us, we have the jurisdiction to review the actions the trial court took in case No. RIC1724414. We do not have jurisdiction to void judgments entered in a separate case that was not listed in the notice of appeal. Therefore, we do not examine whether there are jurisdictional defects in the 2010 judgments.

D.   ATTORNEY'S FEES

Defendants request that, if the judgment is affirmed, then "their entitlement to appellate [attorney's] fees be set forth in the final opinion."  Defendants do not explain why they need us to provide the law on this topic; however, it is easy enough to find and quote, so, as requested:  "The anti-SLAPP statute provides for an award of attorney['s] fees and costs to the prevailing defendant on a special motion to strike.  (§ 425.16, subd. (c).)  The defendant may recover fees and costs only for the motion to strike, not the entire litigation.  [Citations.]  Appellate challenges concerning the motion to strike are also subject to an award of fees and costs, which are determined by the trial court after the appeal is resolved.  [Citation.]  The defendant may claim fees and costs . . . through the filing of a subsequent motion or cost memorandum."  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320.)

## DISPOSITION

The judgment is affirmed.  Defendants are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
            J.

We concur:

RAMIREZ
            P. J.

McKINSTER
            J.

31